# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Margaret Johnson

       Plaintiff,

      v.

Index No. 28352/2009

MediSys Health Network, Brookdale Hospital
Medical Center, Jamaica Hospital Medical Center,
Neighborhood Health Provider LLC, Flushing
Hospital Medical Center, David Rosen, The Board
of Trustees on MediSys Health Network, The Board
of Trustees of Jamaica Hospital Medical Center, The
Board of Trustees of Brookdale Hospital Medical
Center, The Board of Directors of Neighborhood
Health Providers, The Board of Trustees of Flushing
Hospital, Neil Foster Phillips, Judge Tim Dufficy,
Dr. Alvin Kahn, Geraldine M. Chapey, Ph. D., Mr.
Joseph Ferrara, Robert W. Koop, Dr. Anthony
DiMaria, Dr. Geoffrey Doughlin, Dr. Hector
Estepan, Dr. Antonietta Morisco, Douglas W.
Singer, Archie Spigner, John Marus, Edward
Birnbaum, Hugh Greenberg, Ascher L. Mestel, MD,
R.C. Hugh Nelson, Richard Radutzky, Lowell M.
Rubin, Alex Rovt, David I. Schachne, Edwin L.
Schulman, Al Silverman, Allen B. Swerdlick, David
R. Wilkes, Laurence C. Zale, Honorable Darrell
Towns, Steven Plotnick, Esq., Diane Simon, Richard
J. Folger, MD, Vito Buccellato, Bruce Flanz, Mounir
Doss, Steve Bory, Mr. Michael J. Russo, Mr. Robert
Reichenbach, Mr. Dino Guiducci, Charles Balducci,
MD, Mr. Anthony Federici, Mr. Henry E. Froebel,
Victor Guarneri, MD, Mr. Max Kupferberg, Ahamed
Moideen, MD, Alvin I. Orlian, DDS, Mr. David P.
Pagan, Mr. John E. Roe, Sr., William Lynch, Chris
Y. Hwang, Peter Barra, MD, Victor Orioli, MD,
NHP OF INDIANA LLCY ROYAL HEALTH
CARE OF LONG ISLAND LLC d/b/a ROYAL
HEALTH CARE LLC, ROYAL HEALTH CARE
DATA CENTER LLC, NHP HOLDINGS LLC,
LINROC COMMUNITY SERVICES
CORPORATION, INC, THE SCHULMAN AND

**DEMAND FOR SERVICE OF
COMPLAINT PURSUANT TO CPLR
§ 3012(B)**

RECEIVED
KINGS COUNTY CLERK
2010 MAR 19 PM 3:08

SCHACHNE INSTITUTE FOR NURSING AND
REHABILITATION, Inc., AMBOY PROPERTIES
CORPORATION, ROCKREAL CORPORATION,
AMBOY PROPERTIES CORPORATION, THE
LINDEN FOUNDATION, INC., ROCKREAL
CORPORATION, BROOKDALE FAMILY CARE
CENTERS, INC., THE BROOKDALE HOSPITAL
CENTER HEGEMAN HOUSING COMPANY,
INC., THE BROOKDALE RESIDENCE
HOUSING DEVELOPMENT FUND
CORPORATION, LCSC HOLDINGS, INC.,
JAMAICA HOSPITAL STAFF HOUSING CO.,
JAMIACA HOSPITAL MEDICAL CENTER
DIAGNOSTIC & TREATMENT CENTER CORP.,
JAMAICA HOSPTIAL MEIDCAL CENTER
DIAGNOSTIC AND TREATMENT CETNER
CORP., JAMAICA HOSPITAL NURSING HOME
CO. INC., HITECH MEDICAL EQUIPMENT,
INC., FRR RECOVERY, TJH MEDICAL
SERVICES, PC, MEDISYS MANAGEMENT LLC,
COMPREHENSIVE THERAPY SERVICES,
MEDISYS VENTURES INC., MEDISYS
SERVICES CORP., JAMAICA HOSPITAL
NURSING HOME CO., INC., MEDISYS
MANAGEMENT  LLC, MHN PROPERTIES,
INC., MEDISYS IPA LLP, MEDISYS HOME
CARE INC., VWE PROPERTIES CORP.,
QUEENS REPLACEMENT LLC, INT'L ASSOC.
OF MEDICAL BIKE UNITS

           Defendants.

Defendant David Rosen hereby demands that the complaint in the above-

captioned action be served upon undersigned counsel pursuant to CPLR 3012(b).

Dated: New York, New York
March 18, 2010

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.

By: _____

        Robert G. Morvillo
        E. Scott Morvillo
        Ellen M. Murphy
        Robert C. Morvillo

565 Fifth Avenue
New York, NY 10117
Telephone: (212) 856-9600
Fax: (212) 856-9494

*Attorneys for David Rosen*


TO:    Patrick W. Johnson, P.C.
       9118 Third Avenue
       Brooklyn, NY 11209
       (718) 745-5530

       *Attorneys for Plaintiff*

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------x
MARGARET JOHNSON,                                   :

              Plaintiff,                    :          Index No. 28352/2009

      v.                                            :

MEDISYS HEALTH NETWORK, et al.,                     :

            Defendants.                   :

----------------------------------------------------------------x

## NOTICE OF APPEARANCE

       PLEASE TAKE NOTICE that Morvillo, Abramowitz, Grand, Iason, Anello &

Bohrer, P.C., with offices located at 565 Fifth Avenue, New York, New York 10017, hereby

appears on behalf of defendant David Rosen in the above-captioned action.  The undersigned

hereby requests that all papers in the above-referenced action be served upon the undersigned at

the address stated below.  By this Notice of Appearance, Mr. Rosen does not waive any defenses

that may be raised by motion, answer or otherwise, all of which are reserved.

Dated:  New York, New York
       March 18, 2010

                    MORVILLO, ABRAMOWITZ, GRAND,
                    IASON, ANELLO & BOHRER, P.C.

                By: _____
                    Robert G. Morvillo
                    E. Scott Morvillo
                    Ellen M. Murphy
                    Robert C. Morvillo
            565 Fifth Avenue
            New York, New York 10017
            (212) 856-9600 (Phone)
            (212) 856-9494 (Fax)
            *Attorneys for Defendant David Rosen*

2010 MAR 19  PM 3: 08
KINGS COUNTY CLERK
RECEIVED

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------x
MARGARET JOHNSON,                                          :

                 Plaintiff,                         :          Index No. 28352/2009

      v.                                                   :

MEDISYS HEALTH NETWORK, et al.,                 :

             Defendants.                      :

-----------------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                          ss.:
COUNTY OF NEW YORK  )

        Dan Torres, being duly sworn, deposes and says:

    1.     I am not a party in the above action, am over eighteen years old, and reside in New York, New York.

    2.     On March 19, 2010, I personally served true and correct copies of the foregoing Notice of Appearance and Demand for Service of Complaint Pursuant to CPLR § 3012(B) by delivering the same to the addressees below and leaving them with a person who was authorized to accept service:

               Patrick W. Johnson, P.C.
               9118 Third Avenue
               Brooklyn, NY 11209
               (718) 745-5530

    3.     The person who accepted service on behalf of Patrick W. Johnson identified herself as Jacqueline Johnson, Mr. Johnson's secretary. Jacqueline Johnson is 5'10", 190

pounds, and has blonde hair.

Dan Torres

Sworn to before me this
19th day of March, 2010

ANGELICA ROSA
Notary Public, State of New York
No. 01R04620597
Qualified in Queens County
Commission Expires 11/30/20

ND: 4835-2348-0325, v. 1

# EXHIBIT F

At an IAS Part 12 of the Supreme Court
of the State of New York, held
in and for the County of Kings
at the Courthouse, 360 Adams Street
Brooklyn, New York on the 19th
day of March, 2010.

P R E S E N T:

   HON. MARTIN M. SOLOMON

      HON. _____

         JUSTICE OF THE SUPREME COURT


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

Margaret Johnson

              Plaintiff,

         v.

MediSys Health Network, Brookdale Hospital
Medical Center, Jamaica Hospital Medical Center,
Neighborhood Health Provider LLC, Flushing
Hospital Medical Center, David Rosen, The Board of
Trustees on MediSys Health Network, The Board of
Trustees of Jamaica Hospital Medical Center, The
Board of Trustees of Brookdale Hospital Medical
Center, The Board of Directors of Neighborhood
Health Providers, The Board of Trustees of Flushing
Hospital, Neil Foster Phillips, Judge Tim Dufficy, Dr.
Alvin Kahn, Geraldine M. Chapey, Ph. D., Mr. Joseph
Ferrara, Robert W. Koop, Dr. Anthony DiMaria, Dr.
Geoffrey Doughlin, Dr. Hector Estepan, Dr.
Antonietta Morisco, Douglas W. Singer, Archie
Spigner, John Marus, Edward Birnbaum, Hugh
Greenberg, Ascher L. Mestel, MD, R.C. Hugh Nelson,
Richard Radutzky, Lowell M. Rubin, Alex Rovt,
David I. Schachne, Edwin L. Schulman, Al Silverman,
Allen B. Swerdlick, David R. Wilkes, Laurence C.
Zale, Honorable Darrell Towns, Steven Plotnick, Esq.,
Diane Simon, Richard J. Folger, MD, Vito Buccellato,

Index No. 28352/2009

**ORDER TO SHOW
CAUSE IN CIVIL
ACTION WITH TRO**



Bruce Flanz, Mounir Doss, Steve Bory, Mr. Michael J.
Russo, Mr. Robert Reichenbach, Mr. Dino Guiducci,
Charles Balducci, MD. Mr. Anthony Federici, Mr.
Henry E. Froebel, Victor Guarneri, MD, Mr. Max
Kupferberg, Ahamed Moideen, MD, Alvin I. Orlian,
DDS, Mr. David P. Pagan, Mr. John E. Roe, Sr.,
William Lynch, Chris Y. Hwang, Peter Barra, MD,
Victor Orioli, MD, NHP OF INDIANA LLCY
ROYAL HEALTH CARE OF LONG ISLAND LLC
d/b/a ROYAL HEALTH CARE LLC, ROYAL
HEALTH CARE DATA CENTER LLC, NHP
HOLDINGS LLC, LINROC COMMUNITY
SERVICES CORPORATION, INC, THE
SCHULMAN AND SCHACHNE INSTITUTE FOR
NURSING AND REHABILITATION, Inc., AMBOY
PROPERTIES CORPORATION, ROCKREAL
CORPORATION, AMBOY PROPERTIES
CORPORATION, THE LINDEN FOUNDATION,
INC., ROCKREAL CORPORATION, BROOKDALE
FAMILY CARE CENTERS, INC., THE
BROOKDALE HOSPITAL CENTER HEGEMAN
HOUSING COMPANY, INC., THE BROOKDALE
RESIDENCE HOUSING DEVELOPMENT FUND
CORPORATION, LCSC HOLDINGS, INC.,
JAMAICA HOSPITAL STAFF HOUSING CO.,
JAMAICA HOSPITAL MEDICAL CENTER
DIAGNOSTIC & TREATMENT CENTER CORP.,
JAMAICA HOSPTIAL MEIDCAL CENTER
DIAGNOSTIC AND TREATMENT CETNER
CORP., JAMAICA HOSPITAL NURSING HOME
CO. INC., HITECH MEDICAL EQUIPMENT, INC.,
FRR RECOVERY, TJH MEDICAL SERVICES, PC,
MEDISYS MANAGEMENT LLC,
COMPREHENSIVE THERAPY SERVICES,
MEDISYS VENTURES INC., MEDISYS SERVICES
CORP., JAMAICA HOSPITAL NURSING HOME
CO., INC., MEDISYS MANAGEMENT  LLC, MHN
PROPERTIES, INC., MEDISYS IPA LLP, MEDISYS
HOME CARE INC., VWE PROPERTIES CORP.,
QUEENS REPLACEMENT LLC, INT'L ASSOC. OF
MEDICAL BIKE UNITS

Defendants.

Upon reading and filing the affirmation of Randi Seltzer May sworn to on the 18th day of March, 2010, and upon the exhibits attached to the affirmation, and upon Defendants' Memorandum of Law submitted herewith.

Let the plaintiff or her attorney show cause at IAS PART 35, Room 577 of this Court, to be held at the Courthouse, 360 Adams Street, Brooklyn, New York, on the 25th day of March, 2010, at 9:30 o'clock in the fore noon or as soon as counsel may be heard why an order should not be made.

(i)     Sealing the record (including the papers filed in support of this application and the complaint in this action) pursuant to 22 NYCRR §216.1; and

(ii)    Temporarily restraining and preliminarily enjoining plaintiff, her counsel and others active on her behalf or in concert with her, from publishing the complaint to third persons or otherwise disclosing information to third parties that she acquired in her capacity as general counsel or that is otherwise privileged or otherwise protected from disclosure to third parties.

And it is further ORDERED, that pending hearing and determination of this application,

~~(i)     the record in this action pursuant to 22 NYCRR § 216.1, be sealed, and~~

(ii)    plaintiff, her counsel and ~~those acting on her behalf or in concert with her~~ *of their agents* punished from Public other be, and they hereby are temporarily restrained pursuant to CPLR § 6301

Paragraphs 96, 153, 159, 163, 168, 172 and/or 176 of from publishing ∧the complaint to third persons or ~~otherwise disclosing information that she acquired in her capacity as general counsel or that is otherwise protected by the attorney-client privilege~~ to anyone, ~~for the reason that such relief is necessary to protect attorney-client privileged information.~~

Sufficient cause appearing therefor, let service of a copy of this Order, and the papers upon which this Order is granted, upon counsel for the plaintiff Patrick Johnson, Esq. at his office address, 9118-3rd Avenue, Brooklyn, New York on or before 5:00 P.M. on the 22nd day of March, 2010 be deemed good and sufficient service thereof.  An affidavit or other proof of service shall be presented to this Court on the return date directed in the second paragraph of this Order.  Papers in opposition to this application, if any, shall be served at least three days prior to the return date.

ENTER

_____

J.S.C.

**MARTIN M. SOLOMON J.S.C.**

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------------x

Margaret Johnson,

                              Plaintiff,

                    v.

MediSys Health Network, et al,

                              Defendants,

----------------------------------------------------------------x

Index No.: 28352/2009

Affirmation in opposition

1

Patrick W. Johnson, an attorney duly admitted to practice law before the State of New York and the attorney of record for the Plaintiff, Margaret Johnson, Esq., the former Senior Vice President & General Counsel and Corporate Compliance Office, of MediSys Health Network, Inc., and all of its related companies; Assistant Corporate Secretary for Brookdale Hospital Medical Center, and all of the MediSys companies located in Brooklyn, and a Director of Neighborhood Health Providers, affirms the following to be true pursuant to the penalty of perjury:

1.     I submit this affirmation in opposition to the Defendants' Order to Show Cause to seal the record in this matter pursuant to 22NYCRR Section 216.1, claiming that the information is subject to the attorney client privilege, and Plaintiff's request that sanctions and attorney fees are award for intentionally commencing this frivolous motion.

2.     This matter was commenced by filing a Summons with Notice on or about November 8, 2009. ( Plaintiff's Exhibit 1)

3.     Plaintiff attempted to resolve this mater without litigation with the  attorneys for the Defendants, all of the named corporations and its respective governing bodies the Trustees, (collectively the "Defendants") Hoguet Newman Regal & Kennedy and Robert Morvello (the  attorney for co-defendant David Rosen).

4.     In early September 2009, Plaintiff  was advised that the law firm of Hoguet Newman Regal & Kenney represented the Defendants. On  September 15, 2009,  Ms. May, Esq. of  Hoguet Newman Regal & Kennedy, received a copy of Plaintiff's draft Complaint. She was also provided a summary of the other causes of action and was read some of the inappropriate and salacious emails from  Co-Defendant David Rosen to the Plaintiff.

5.     Later on the same day, Ms. May confirmed that her clients the Defendants were on "Notice of all of Plaintiff's claims", and that a  special committee of the Defendants had been formed and she may receive settlement authority shortly.  She was so disturbed by the emails,  she advised that Defendants were moving away from David Rosen, and he had retained his own counsel.

6.     Ms. May's statement in her papers  that the Defendants first became aware of the existence of this lawsuit on February 27, 2010 is misleading, at best, as are all of her claims relating to Plaintiff and her accusations concerning me.

1

7.     On September 30, 2009 the attorneys for the parties met.  During the meeting, Plaintiff's former attorney was threaten with grievances, yelled at, and told to get Plaintiff to settle cheaply.   Defendants' attorneys also threatened to take preemptive moves to stop the filing of the lawsuit and bombard Plaintiff's attorney with paper. It was implied that Plaintiff and her attorney would be reported to the Disciplinary Committee, and further that the Defendants would file an Appeal to every adverse decision, causing Plaintiff to expend a tremendous amount of time, paperwork and expense. All of the above was to create a chilling effect on any attorney, who may have otherwise been willing to take this case on a pure contingency basis.

8.     On  October 2, 2009, Ms. May was advised that a Trustee of the governing body of Brookdale Hospital, Allen Roth, resigned from the governing body of Brookdale's Board of Trustees due to some of the same inappropriate actions of which Ms. Johnson was complaining. ( Exhibit 2, Resignation letter of Allen Roth)

9.     On October 30, 2009, Ms. May was advised that every single Trustee was being named in the action jointly as the Board of Trustees, the governing body of all of the named Corporations; and individually, for breaches of their fiduciary duties, violations of the corporate compliance program and other compliance policies, and pertinent laws, rules and regulations. Ms. May advised that she was "not sure" if she represented the Trustees, individually, or had the Trustees' consent to accept service of the Complaint on their behalf, however, she was meeting with the governing body, the Trustees regarding the matter.

10.    On November 4, 2009,   Plaintiff's former attorney advised, that Plaintiff should appear Pro Se if she could not afford to pay the attorney expenses up front and a retainer given that the defendants promised it would be a long, ugly and costly litigation.

11.    On November 5, 2009, as the statute of limitations was about to run on some of the claims, Ms. Laura Hoguet, Ms. May's partner advised that the Defendants would agree to long tolling agreement, if Plaintiff agreed to not to take action rather submit to mediation. However, during mediation Defendants' would claim that everything Plaintiff alleged was protected by the attorney client privilege and future action would then be taken against Plaintiff if she did not settle.  The strategy was clear. It would be a  waste of

2

time and money to prepare for and participate in a mediation based upon the aforementioned.

12.     My firm was retained and quickly filed the Summons with Notice which named all of the Corporations, its respective governing bodies, "the Trustees", and the Trustees individually.  Subsequently, my firm received a call from a reporter from the *New York Times*. I did not discuss the matter with the reporter, nor did the Plaintiff. Again, Ms. May's accusations to the contrary are simply untrue, and without any substantiate evidence.

13.     From January 2010 to March of 2010,  Plaintiff's allegations were discussed with Defendants. Ms. May,  advised that she was reporting to the Defendants,   the significance of the claims.

14.     Negotiation were at a stand still and Ms. May was advised that the Summons with Notice would be served immediately, followed by the Complaint, since the statue of limitations was running. Ms. May refused to accept service for any of the Defendants. She advised that she did not represent the Trustees.  Plaintiff's Complaint was filed with this Court on March 8, 2010, (Plaintiff's Exhibit 3).

15.     Ms. May's allegations are disingenuous at best.  Since September 2009, Defense Counsel advised that they were meeting with and reporting to the Defendants. However in her affirmation she notes that the Defendants became aware of the lawsuit on February 27, 2010. Defense Counsel brought this Order to Show Cause with its allegations based upon pure speculation, (which were wrong). Defense Counsel said she did not read the Complaint, if so, how could she advise the court what was in the Complaint. She would not know what was actually alleged. I had less than one day notice for the Court appearance. I had to reschedule previously scheduled Court appearances on other matters, and I was only served with the papers as I appeared in Court.  These allegations contained within Counsel's Affirmation are just smoke screens to create a false sense of urgency, allowing the papers to move through the Court quickly.

16.     Neither the Plaintiff nor my law firm ever made threats to disclose any information that is protected by the attorney client privilege. It is an outrageous accusation. In fact, Plaintiff took great efforts to ensure that she did not breach the attorney client privilege, as discussed with Ms. May in September of 2009. Case law was

3

provided to and discussed with Ms. May regarding exceptions for attorney regarding employment at will and implied contract. She was also aware of the strict liability that attaches to an employer that allows a direct supervisor (President) to inappropriate harass and sexual harass subordinates (See, Burlington Industries v. Ellerth, 52 US 742 (1998). She was made aware of allegations regarding violation of its policies, procedures, and the law, i.e. breach of contract, tortious interference with contract, failure to comply with its own policies and procedures including its' Corporate Compliance Program, defamation, providing poor job references and advising that she is litigious ( even before suite was commenced), banning Plaintiff from her doctors' offices and denying personal access to a federally funded 340(B) discount pharmacy, banning her from Brookdale Hospital, and breach of fiduciary duties among others, which are in no way protected by the Attorney – Client privilege.

17.    Ms. May made this application, asserting facts that were not raised in the Complaint, without even reading the Complaint, which she knew was already filed with the Court. The Hon. Martin Solomon provided Ms. May with an opportunity to review the allegations noting the heavy burden Defendants had to meet and the strict legal standard that are difficult to meet. After her review, she still did not withdraw the application. (Plaintiff's Exhibit 4, transcript of March 18, 2008 before Judge Solomon). During her argument, she advised the Court that she was not representing the individual Trustees only "appearing" for them on this motion while simultaneously serving Plaintiff with a Demand for a Complaint from all of the named Defendants, (except Rosen) identifying herself as the attorney for ALL Defendants except Rosen.

18.    After lengthy arguments Judge Solomon decided that the Defendants did not meet their heavy burden, however there would be no harm by allowing a hold on 9 paragraphs out of 458 paragraphs, since it was acknowledged that the entire Complaint had already been file for approximately one week. At 3 pm, Plaintiff agreed to accept service of the Court's Order by waiting until Defendants' Counsel was able to make copies well after 4pm, and the Defendants' Counsel agreed to accept service of the Complaint in Court. Defense Counsel advised the following week that she would not accept the service provided to her in Court.

4

19.    It is well settled law in New York that the attorney-client privilege protects communication, not facts, that is provided by an attorney to his/her client, that is sought by the client from its attorney exclusively for the primary purpose of obtaining legal advice. However, not all communications are protected. Corporation's in-house counsel, who generally hold many titles and also has business responsibilities, the communication are not protected so easily. (See, attached Memorandum of Law).

20.    New York and Federal law is clear, the Defendants can not insulate themselves from liability claiming the attorney client privilege to all acts, conversations, thoughts writings, negotiation of an in house counsel who also holds Administrative tittles and respective duties. See, Plaintiff's *Exhibit "5", New York State Bar Association Journal, January 2010, The Conundrum of Preserving in-house Attorney Client Privilege; SR Int'l Bus. Ins. Co V. World Trade Ctr. Props. LLC., 2003 U.S. Dist. Lexis 1106 (S.D.N.Y. Jan 23,2003 citing Upjohn, 449, U.S. at 396.("A party cannot conceal a fact merely by revealing it to his lawyer"),* Attached Memorandum of Law.

21.    Co-defendants, Rosen, Doss and Flanz discussion with other Defendants are not protected communication by the mere presence of Plaintiff, the in-house counsel, who had many titles and many business responsibilities, including strategic planning, corporate compliance, corporate secretary, risk management, supervising attorney in lawsuits, reviewing policy, state and governmental matters, contracts, human resources, Residence issues among other responsibilities.

22.    Most courts generally require that certain elements be demonstrated before finding that the attorney client privilege applies. The case often cited recitation of the elements was articulated in *U.S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass. 1950), where the Court enumerated the following five-part test: (1) the person asserting the privilege must be a client or someone attempting to establish a relationship as a client; (2) the person with whom the client communicated must be an attorney and acting in the capacity as an attorney at the time of the communication; (3) *the communication must be between the attorney and client exclusively;* (4) *the communication must be for the purpose of securing a legal opinion, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or fraud; and* (5) *the privilege may be claimed or waived by the client only. See, also memo of law attached hereto for New York law.*

5

23.    Defendants whom raised the attorney client privilege have the burden of proving the existence of the privilege, and also a waiver of the privilege, which is a difficult legal standard to meet, which Defendants failed to meet. (See, attached Memorandum of Law).

24.    When an attorney-client communication is shared with a third party, the privilege is waived. To be privileged, a communication must not only be intended as confidential, it must actually be confidential and it must be for the purpose of securing a legal opinion, legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or fraud.

25.    Ms. Mays complains that the Complaint discloses information that is protected by the attorney client privilege, yet she was unable to successfully demonstrate to the Court where and how the allegations in the Complaint violate the attorney client privilege. (See, Plaintiff's Exhibit 4). Ms. May argument that "who said what to whom" is privileged information is just wrong and not supported by any law.   The law is clear that the burden of establishing attorney-client privilege -- in all of its elements -- is on the party asserting it.   Accordingly, like any other employment dispute who said what to whom is not  privileged communication.

26.    Plaintiff's allegations of breach of contract, breach of implied contract, sexual harassment, wrongful and retaliatory discharge, discrimination, threats of termination, and the other causes of action are in no way protected communication. There was no legal advice sought of Plaintiff from the Trustees, exclusively, or provided to them by the Plaintiff. The attorney client privilege applies only when the primary purpose of the communication is to obtain legal advice. Rossi v. Blue Cross& Blue Shield of Greater N.Y., 73 N.Y.2d 324, 329, 476 N.Y.S2d 548(1998) See, attached Memorandum of Law.

27.    It is clear that the application of the attorney client privileged to in-house counsel is different from outside counsel since in-house counsel often wears many hats and has business and administrated duties, like the Plaintiff. Courts have developed two justifications for higher scrutiny in applying the attorney client privilege to in-house counsel (1) to avoid protecting business communications (the protection of which would not further the underlying rationale of the attorney client privilege), and (2) to prevent corporations from improperly protecting otherwise unprivileged communications and

information by funneling them through in house counsel. Amy L. Weiss, *In House Counsel Beware: Wearing the business hat could mean losing the privilege*, 11 Geo. J. Legal Ethics 393,398,(1998);*The care and feeding of in-house Counsel*, 67 Ala. Law 340 (2006); *The Conundrum of preserving in-hose attorney client privilege*, New York State Bar Association Journal, (January 2010).

28.     Communication concerning threats of termination and other violations of policies, rules and procedures are not  protected communication under the attorney client privilege as asserted by Ms. May.  No legal advice is sought from Plaintiff by the Trustees. This Complaint, like other complaints contains allegations.

29.     Any communication between Plaintiff with Co-Defendants Rosen, Mounir Doss, Executive Vice President & CFO ("Doss") or Bruce J. Flanz, Executive Vice President & COO, ("Flanz"), while they had retained separate counsel is not protected communication. There was no attorney client relationship with the Plaintiff, and  no legal advise sought from the Plaintiff.

30.     Ms. May is attempting to insulate the Defendants  from liability and subsequent media attention by  claiming the Plaintiff's allegations in her Complaints are privileged and not discoverable, by the mere fact that she held the title  General Counsel. That was just one of many titles, Ms. Johnson held.

31.     Rossi v. Blue Cross & Blue Shield of Greater New York, N.Y., 73 N.Y.2d 588, 542 N.Y.S.2d 548 (1989) is the seminal New York Court of Appeal case, Rossi, supra, is instructive. There the  issue was  whether in—house counsel's internal memo was protected by the attorney client privilege. In discussing the difficulties arising from the application  of the privilege to in-house counsel, and finding the privilege must be applied cautiously, with heighten scrutiny, Judge Kay wrote:

[U]nlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with a mixed business legal responsibility: whether or not officers, their day to day involvement in their employer's affairs may blurr the line between legal and non legal communications; and the advice may originate not in response to the client's consultation about a particular problem but with them, as part of an ongoing, permanent relationship with the organization.  In that the privilege obstructs the truth finding process and to what which is necessary to achieve its purpose…,the need

7

to apply it cautiously and narrowly is heighten in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure. *Id.at 592-593.*

32.     Only the communications **pertaining to advice, and not the underlying facts,** are protected by the privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *Williams v. Sprint/United Management Co.,* 2006 WL 1867478 at *5 (D. Kan. July 1, 2006) ("The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing."); *United States v. Keystone Sanitation Co.,* 885 F. Supp. 672, 675 (M.D. Pa. 1994) ("attorney billing statements and time records are protected by the attorney-client privilege *only* to the extent that they reveal litigation strategy and/or the nature of services performed.

33.     In contrast to what Ms. May advised the Court, New York law provides that an Attorney Engagement Letter is not a privileged communication. The letter does not convey any legal advice. Rather, it merely sets forth, in extremely general terms, the scope of the attorney's engagement. Thus, it is not privileged. Newmarkets Partners, LLC, v. Sal Oppenheim Jr. & Cie. S.C.A., 258 F.R.D. 95, 103 (S.D.N.Y. 2009); *The Conundrum of Preserving In – House Attorney Client Privilege,* supra.

34.     Plaintiff's communication with the co-defendants, Rosen, Flanz and Doss  to retain separate counsel since the Plaintiff could not represent them due to conflicts of interests with MediSys,  and that a Chinese wall must be maintained is not protected by the attorney client privilege, as maintained by Defense counsel.

35.     Plaintiff in her capacity as General Counsel always represented the Corporation/Trustees not management/ employees ( Exhibit "5"  Standard of Excellence, Code of Ethics and Business Conduct, available on Brookdale, Jamaica & Flushing Hospitals' website) Again this is Defendants attempt to weight down Plaintiff with legal expenses and wasting Counsel's time. Defendants have the burden of proving the attorney client privilege not the Plaintiff.

36.     On March 19, 2010, after hearing arguments Hon. Justice Martin M. Solomon found that  Ms. May failed to meet her heavy burden of proof to have the record sealed.

8

37.     As Ms. May pointed out that a case record may be sealed by order of the court, pursuant to the provisions of 216.1 of the Uniform Rules for the New York State Trial Courts, which provides that, where a case file is not otherwise sealed by statute or rule, the court "**shall not**" enter an order sealing the court records in whole or in part **except on "a written finding of good cause, which shall specify the grounds therefore**." In deciding whether good cause exists to seal records, the court must consider the interests of the public as well as the parties. *See* George F. Carpinello, *Public Access to Court Records in New York: The Experience under Uniform Rule 216.1 and the Rule's Future in a World of Electronic Filing*, 66 Albany L. Rev. 1089 (2003). Court case records are, as a general proposition, public.

38.     Judge Solomon in considering the public interest reasoned that the file should not be sealed. Ms. May cited MediSys' interest of not reading about itself in the press, "who said what to whom when" and preservation of the Attorney client privilege as the public interest.

39.     Plaintiff contends just the opposite. (1)There is no attorney client privileged communication. (2) The debate of the cost of healthcare, fraud and abuse has become heated within the last year, reported in the press almost every day. Transparency mandates and the public is interesting in learning what occurs behind the bureaucratic doors of the hospitals, and how their tax money is being spent by funding these ridiculous motions. It also has an interest in learning how the Trustees' fill their fiduciary duties and responsibility to the Hospital and to **the community in which the hospital serves**, and to its vendors. The Board of Trustees of a not for profit corporation is subject to a fiduciary duty of care that is specifically implicated in the context of internal controls and which includes its oversight obligations. The duty of care describes the Trustees' obligation to exercise an appropriate degree of care in the decision-making process and in the oversight of corporate affairs. The duty of care requires the Trustees to act "with the care of an ordinarily prudent person in a like position would exercise under similar circumstances. This is the law, there is no confidential secrete here. In this post Enron error, the public is scrutinizing not for profit companies, reviewing excessive executives' compensation, private inurnment issues and other issues. There is a great need for

transparency. Even the US Sentencing Guidelines address the above which applies to not for profit corporations.

40.     Defendants' interests are only self serving, there is no public interest here in denying the public access by protecting disclosure of information that is not protected. The bright light cast upon the judicial process by public observation diminishes the possibility for injustice, incompetence, perjury, and fraud.

41.     Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system, and a better perception of fairness. And lastly, the chilling effect it would have on not allowing Plaintiff her right to openly litigate the Defendants for the wrongs done to her.

42.     Ms. May states her strategy in her papers that once she wins this motion she is moving to dismiss the case, with Plaintiff losing the ability to discuss any allegation, all being dismissed due to attorney client privilege, opportunity of discovery and  right to open litigation, and to actually litigate this matter forever.

43.     As a general matter of  both New York State and federal law, court records must be public.

44.     Justice William O. Douglas said more than 50 years ago remains true today: "A trial is a public event. What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 373 (1947).

45.     The same is true of most case records. In fact, the Seminerio criminal case was open to the public. The records, evidence, briefs, emails, audio wire taps and transcript of the wire taped phone calls between Rosen and Seminerio are all available on the internet, all open for public viewing. ( Plaintiff's Exhibit 6 sampling of court documents retrieved from the internet, press, and the Court House).

46.     Both New York statutory and common law create a presumption that judicial proceedings and case records are to be open to the public. (See, attached Memorandum of Law).

47.     Numerous cases emphasize the value placed on open court proceedings and records. More recently, this view was echoed by the First Department in a civil case, *Danco Laboratories, Ltd. v. Chemical Works of Gedeon Richter, Ltd.*, 274 A.D.2d 1 (1st Dep't 2000), where the *Washington Post* successfully sought to obtain access to

previously sealed court records in a commercial dispute involving the manufacturer of anabortifacient drug, RU-486, regarding its possible distribution and sale in the United States. The court, relying on federal constitutional principles set forth in prior case law, noted that the public's interest in access to court proceedings and records often is as strong, or even stronger, in civil cases as it is in criminal cases. (See, attached Memorandum of Law). Defendants did not meet its heavy burden to demonstrate good cause.

48.     After Ms. May went through the entire Complaint, she selected paragraphs she believed were protected by attorney client privilege. Judge Solomon did not find any breach of the attorney client privilege, noting **allegations** in the Complaint, which he reasoned are clearly are not protected communications.( Plaintiff Exhibit 4 Transcript). Not only couldn't Ms. May meet her heavy burden, she was unable to articulate a valid legal reason why or how the information was protected by the Attorney Client Privilege.

49.     Judge Solomon noted that the Complaint was already filed and scanned in the Court's computer last week,  acknowledged that the Complain had already been publish to individual outside the control of the Plaintiff, Defendants and the Court.

50.     Judge Solomon denied Defendants request to seal the record however issued a temporary restraining order against Plaintiff and her attorney commencing at 3pm March 19, 2010, restraining them from publishing paragraphs 96, 153,159, 163, 168, 172 and/or 176 of the Complaint until March 25, 2010, when arguments may be hear by another Judge.  His reasoning that there was no harm since the Complaint in its entirety was already published and he found no violation of an attorney client privilege. Plaintiff abided by his ruling.

51.     Judge Solomon warned Ms. May that if she attempted to bring any kind of an action against Plaintiff or her counsel for any materials including the aforementioned paragraphs that were publish prior to 3pm on March 19, 2010, that he would allow motions for sanctions, damages and attorneys fees against the Defendants and their law firm.

52.     Plaintiff contends that neither the Complaint in its entirety, nor paragraphs 96, 153, 159, 163, 168, 172, and or 176 of the Complaint, violates the attorney client privilege as it pertains to the Plaintiff, the Senior Vice President & General Counsel,

11

Corporate Compliance Officer, Director and Officer, and the Defendants. Also Plaintiff contends that the Defendants failed to meet their burden of proof, failed to establish a privilege existed, failed to establish a waiver of the privilege, accordingly, the motion should be dismissed in its entirety awarding sanctions and costs.

53.    At all times, all of the employees of MediSy that were or could have been implicated in the Seminerio investigation retained separate counsel in reference to the criminal investigation of Anthony Seminerio.

54.    Ms. May's attempt to cloak unprivileged information, within the shield of the privilege to the detriment of the Plaintiff's rights could be considered unethical conduct. See, *The Moral Compass of the American Lawyer*, Richard A. Zitvin & CarolM. Langford, *The Moral Compass of The American Lawyer* (Ballantine  Publ'g Group 1999).

55.    Ms. May contends that the Plaintiff is an "at will" employee is naturally her defense. Plaintiff contends the opposite, she was not an at will employee. Discovery should be allowed to go forward. Plaintiff can prove this allegation without any violation of the attorney client privilege.

56.    Plaintiff contents that the Defendants' violated their own policies and procedure, including its own corporate compliance program, which can be demonstrated without violation of the attorney client privilege. Defendants should welcome the opportunity to demonstrating to its employees that the Plaintiff was not terminated wrongfully and in retaliation for reporting unethical conduct, which is in and of itself a serious violation of the Corporate Compliance Program. ( See, Code of Conduct). The message Defendants sent to its' employees is that if you report unethical conduct you can and will be retaliated against. "If they can retaliate, and terminate the Corporate Compliance Officer, wrongfully, they can do it to any of us" Plaintiff can make these allegations and support them factually without  revealing any attorney client privileged information. Plaintiff can prove every allegation without violating the attorney client privilege. That is what discovery is for.

57.    Ms. May incorrectly states in her papers, before reading the Complaint, that **Plaintiff wanted to control** the actions of MediSys' outside counsel in connection with the criminal complaint. Plaintiff does not allege in her Complain that she wanted to

control the outside criminal counsel. Those words are not in the Complaint. Plaintiff alleges that the parties had to be in compliance with the rules that govern attorneys, and the laws. Plaintiff made the allegation and can support it factually without a violation of the attorney client privilege.

58.     Discovery should shine a bright light on these issues. The cloak of privilege cannot be used to prevent disclosure of information provided with the intent to further a continuing or future crime or a fraud. *See, In re Grand Jury Investigation*, 445 F.3d 266, 274 (3d Cir. 2006) (providing a detailed discussion of the crime-fraud exception); *Wachtel v. Guardian Life Ins. Co.*, 2006 WL 1286189 at *1 (D.N.J. May 8, 2006); *and People v Kahn* , Queens Supreme Court, p.44 of New York Law Journal, January 21, 2010 (*Judge allows lawyer to testify against ex-client on tampering*).

59.     Ms. May failed to acknowledge to Judge Solomon  that there are over 100 articles, blogs, documents, TV and radio announcement, newspaper articles concerning MediSys' actions and/or MediSys' and/or its executives' actions regarding the Seminerio criminal matter, about executive compensation and other matters of public interest that were published by the press **and the US Attorney's Office**. It is public knowledge in the public domain and the subject of public debate. Defense Counsel can  Google it.

60.     Ms. May also argued that MediSys can not defend themselves without disclosing information that they are entitled to keep confidential. She doesn't advise the Court what information they are entitled to keep confidential. Threats and conversation by Rosen, Flanz and Doss with the Plaintiff are not protected communications. There was no attorney client relationship. They were not seeking legal advice. Such assertion is ridiculous.

61.     Ms. May can use the attorney client privilege as a cloak and dagger. If we utilize Ms. May's logic, then it follows that by Ms. May alleging that the Plaintiff's "inexperience in handling criminal matters", she has waive what she is labeling the attorney client privilege and the  Plaintiff should now be able to defend this allegation by demonstrating her experience in handling criminal matters, which, by the way, are public matters and in the public domain.  However, Plaintiff contends that her allegation is not protected by the attorney client privilege. It seems Ms. May agrees that allegations are

not covered by the attorney client privilege or she would not raise the issue of experience in handling criminal matters.

62.     Ms. May states that the US attorney withdrew the subpoena. Again using Ms. May's logic, by raising it, she waived it. Plaintiff should now be able to advise the Court of, who, how and why the US attorney withdrew the subpoena. However, Plaintiff contends that the aforementioned fact is not covered by the attorney client privilege, as it seems Ms. May agrees, or she would not raise the issue of withdrawal in the first place.

63.     Ms. May's states that Plaintiff asserted that the criminal attorney, could only take direction from her exclusively, and the criminal attorney could not speak with the Officers without Plaintiffs consent. Plaintiff's Complaint does not allege that. Using Ms. May's logic since she raised it, the privilege is waived, and now Plaintiff is free to advised the court exactly what was said, by whom, when and where, or anything.

64.     It is strange how Ms. May would bring a motion regarding a Complaint she never read. Pure speculation of allegations, and misleading, inconsistent facts does not meet the Defendants' heavy burden. Ms. May must demonstrate it factually.

65.     Ms. May states that the Plaintiff interfered with the criminal attorney's full and prompt investigation with the Government, however, she will not allow Plaintiff to defend Ms. May's allegation. It is not in the Complaint. Facts whether true or not are not protected by the privilege. During discovery, the examinations before trial, production of documents, policies....will support and prove Plaintiff's allegations without violation of a privilege. This motion is nothing more than a fishing expedition, to obtain evidence early, and a waste of time and resources of the Plaintiff, the Court, and the People of the State of New York.

66.     Board minutes that were distributed to third parties months **after** Plaintiff's termination, reveal that the Criminal attorney in question had refused to meet with the Brookdale Trustees because he didn't trust them. Such documents distributed to third parties can not be considered protected by the attorney client privilege. Especially, if the third parties distributes to others and makes it available to others. Board minutes are not confidential, in contrast to Ms. May's contention. The New York State Department of Health, Mental Health Agency, Joint Commission on Accreditation, and various governmental agencies review these minutes regularly. So do accounting firms. In fact

14

the very minutes at issue were made available to the Joint Commission of Accreditation in 2009. Plaintiff was banned from the premises, long gone and had no access to such documents as Ms. May infers.

67.     Plaintiff can, and will prove that she was wrongfully and illegally terminated. Such facts are clearly not protected. The Court should be aware that both current Trustees and former Trustees spoke publically about Plaintiff's termination, their fiduciary duties days after Plaintiff's termination, and before Plaintiff filed her Complaint. Therefore, even if there was a privilege, which Plaintiff contends that such information is not protected, then Defendants waived it, by disclosing the information to third parties and discussing it with others. Not only did they speak with each other but they also spoke with current and former employees, including former doctors and nurses, and current employees who have no business reason to know. As recently as last month, Plaintiff was advised that Co-Defendant, Alvin Khan, discussed the investigation to current employee and advised that he was extremely upset, since Rosen told him he would need to retain his own attorney in this matter due to the conflict of interests. Flanz's wife also knew and questioned Rosen's wife about Rosen's inappropriate conduct.

68.     In paragraph 14 of Ms. May's affidavit, she erroneously accuses my client of leaking emails to the press. She states that "she knows" it is my client since Plaintiff assisted the criminal attorney in collecting the emails. More specifically states that Plaintiff was "one of only three employees to have access to these emails, the other two people did not have knowledge of their significance".

69.     This is an outrageous accusation based upon speculation without providing any substantiating evidence.  First, Ms. May does not identify the emails, the name of the press, what the press told Defendants and Defense counsel, the identity of the  third party who advised them, what the person said, who Defendants made it own inquiry to determine how they "knew it was the Plaintiff". Nor does Ms. May provide a copies of the emails so that Plaintiff can try to understand what she is alleging. Second, Ms. May misleadingly and intentionally states that Plaintiff was one of only three who had access. This is completely false. Plaintiff must be able to defend this claim. This is not privileged information, if it were, then using Ms. May's logic, she just waived the privilege by discussing MediSys' executive emails with a public official in her papers. It was not

15

raised in the Complaint. Plaintiff is only learning about it now and questions it legitimacy.

70.     Ms. May did not advise the Court that during the recovery process, the Jamaica Information System Department inadvertently sent emails to outside account, third parties. They were not sure how many emails were sent, which emails were sent, or to whom the emails were sent to.

71.     There were at least eight employees of MediSys that had direct access to these emails, this does not include the staff of the forensic company that was retrieving the emails, Brookdale Hospital's Information System (IS) Department's staff that were retrieving emails, other Jamaica Hospital's IS Department staff,  Neighborhood Health Providers' IS Department's staff and any other consultants, and employees that the Defendants hired to work with the email system. In fact, Brookdale's internal policies allows Management to review email system  for illegal use.

72.     Ms. May also **fails to note that that the individual defendants**, Rosen, Doss, and Flanz, individually and  their counsel and their respective attorneys and the attorneys' law firms and their computer departments all had open access to all of the emails as they were being collected. The same may be true for the other employees who were represented by separate counsel. In fact, since these Defendants have separate interests - at least one Defendant testified under a non prosecutorial agreement for the Government ( See, New York Times) - maybe one of the executives leaked the emails to the press to ensure that a different executive would  be implicated.

73.     Also, Ms. May failed to advise the Court that the US Attorney also submitted emails into evidence in the Seminerio matter, which were made available to the public as early as January of this year.

74.     Ms. May states that only Plaintiff "knew" the emails were significant. If the emails were between the executives in question, and a public official, and the criminal investigation is about the executives and their relationship with public officials,  then one could reasonably concluded that just about everyone would know it was significant, including the public, the press, and the US Attorney's Office. If these significant emails do exist and were leaked to the press,  then one would hope that the US attorney was previously provided copies, as one would expect in a criminal investigation regarding the

16

same, and if they were, submitted it into evidence by the US attorney, and since January made available to the public since the record is open and not sealed. If such email exists, and were significant then why weren't they published in the press, or into evidence, like similar emails/documents.

75. MediSys and/or Rosen and the other executives involvement with public officials and the criminal investigation were published by various newspapers and TV and radio, hundreds of times. For Ms. May to speculate that it was the Plaintiff is unacceptable and warrants sanctions and costs.

76. The US Government filed as evidence emails, transcripts and actual audio of wire tap between a public official (Seminerio and Rosen) as well as the Pre- Sentencing Briefs, Briefs supporting and in opposition. The New York Times as well as other news paper published links to such evidence and court papers. Blogs and articles made reference to Seminerio and his relationship with MediSys and Rosen.

77. Ms. May advised the Court of her strategy for this case, get the record seal because of attorney client privilege, resulting in the allegations in the Complain stricken, then move to dismiss the Complaint for failure to state a cause of action. This would have a chilling effect on the justice system, and the public confidence, if Defendants' were able to close the mouth of a Plaintiff trying to redress wrongs and injury done to her by the Defendants.

78. It is interesting to note, that the Plaintiff was advised on or about February 8, 2010, and it was verified and confirmed again on March 18, 2010, by James W. Clyne, Jr., Deputy Commissioner, Office of Health Systems Management, New York State Department of Health; that during a meeting held on or about October 1, 2009, with the MediSys Health Network Trustees (Brookdale, Jamaica Hospitals and MediSys) , Michael Brown, Esq., and Fred Orenstein, Esq., their attorneys, officials of the Department of Health were advised that MediSys waived the attorney client privilege during an interview with the United States Attorneys Office, for the Southern District in regards to the Seminerio investigation.

79. A review of the Federal Court documents that are publically accessible on the internet, reveals an email chain that was started by the Plaintiff to Rosen, which was forward by Rosen to others. This email from Plaintiff to Rosen was submitted into

evidence. (Using Ms. May's argument, the attorney client privilege was waived, since it was an email from Plaintiff to Rosen. ( See, Presentencing brief, Government Exhibits ). Once the attorney client privilege is waived it is waived for good.

80.     It is simply outrageous that Defendants continue to defame, harass and attempts to prevent. Plaintiff from gaining employment in the legal profession. Defendants failed to meet the difficult legal standards that are required that any of the information was privileged.

81. The seven paragraphs that Plaintiff was directed not to publish are as follows:

82. Paragraph 96 reads:  Defendants wrongfully terminated Plaintiff's employment in retaliation for Plaintiff's decision to discharge the attorney representing MediSys Health Network, Jamaica, Brookdale and Flushing Hospitals, and Neighborhood Health Providers in a criminal investigation involving bribery of public officials. Plaintiff discharged the attorney because the attorney was improperly representing them in violation of the disciplinary rules relating to representation of an organization by failing to communicate with Plaintiff, the Defendants' General Counsel, and by instead communicating with, advising, and taking direction from the Co-Defendants, David P. Rosen, MediSys' President and Chief Executive Officer, and other executives of MediSys, even though Rosen and the other executives had interests that conflicted with those of MediSys; subject of the investigation and was each represented by his own separate counsel. Plaintiff was faced with the choice of continued employment or possible suspension or disbarment for violation of ethical obligations, and laws.

The information contained in the allegations were published and/or are facts that are not covered by the attorney client privilege for reasons stated above and supported in the attached memo of law.

83. Paragraph 153 reads:  In approximately September 2008, at Rosen's request, MediSys retained Victor Rocco, Esq., (Attorney Rocco), a criminal defense attorney who was a partner at Heller Ehrman LLP at the time, to represent MediSys and its affiliated entities in the investigation relating to Seminerio. In addition, Plaintiff directed Rosen, Flanz and Doss, as well as other MediSys Vice Presidents who had dealings with Seminerio or other public officials, that may

18

have had financial relationship with MediSys (collectively, Subject Executives), to retain separate counsel to represent them individually in the investigation at MediSys' expense. Plaintiff decided that the Subject Executives could not be represented by MediSys' counsel because they were subjects of the investigation related to Seminerio, may have interests potentially averse to MediSys, and should not be permitted to be involved in MediSys' response to the investigation.

There is no attorney client relationship between Executive Defendants and Plaintiff. The mere statement that the Plaintiff can not represent the Executive Defendants because of potential conflicts is not legal advice sought by MediSys from the Plaintiff

84. Paragraph 159 reads: Attorney Rocco with complete disregard for these ethical obligations, throughout the investigation, Attorney Rocco communicated with, advised, and took direction from Rosen, Flanz and Doss instead of Plaintiff. Incredibly, Attorney Rocco informed Plaintiff that he could not discuss certain matters with Plaintiff because Plaintiff was a potential witness in the investigation for not knowing about the alleged unlawful relationship, while, at the same time, communicating with Rosen, Doss and Flanz subjects of the investigation, who retained separate lawyers to represent them, about the same matters. He also refused to meet /speak with the Trustees regarding actions that needed to be taken saying rather it was managements decision. Placing management's interests before MediSys.

These allegations are not protected information by the attorney client privilege. No legal advice is sought by MediSys from the Plaintiff ,exclusively or at all. There is no attorney client relationship with Executives

85. Paragraph 163 reads. Upon advice of outside corporate counsel, Plaintiff advised Attorney Rocco on several occasions that Attorney Rocco was not representing MediSys properly and that he needed to communicate with Plaintiff and not communicate with the Subject Executives, Defendants, Rosen, Flanz and Doss. Attorney Rocco not only did not abide by Plaintiff's requests, he advised

19

Defendant Rosen about them, resulting in Defendant Rosen complaining to Plaintiff that Plaintiff "….was putting them on ice."

Plaintiff was referring to her own corporate counsel, Dewey & LeBouf. Plaintiff hired them when she became concerned about her ethical responsibilities and  Rosen intentionally erroneously advised her that she was a target of the investigation. It was confirmed that Plaintiff was not a target nor a subject of  the investigation. No legal advice is requested by MediSys from the Plaintiff. There is no attorney client relationship between the Subject Executive . These allegations are not protected by the attorney client privilege.

86. Paragraph 168 reads. Plaintiff believed that the continued interaction between Defendant Rosen and Attorney Rocco could cause a charge of obstruction of Justice and/or tampering with evidence.

There was no attorney client relationship between Rosen and Rocco. Plaintiff belief concerning her own ethical responsibilities is not covered by the attorney client privilege and can be prove without any violation f the privilege.

87. Paragraph 172 reads: There was no question regarding the underlying obligation to take action. Knowingly giving false information could be perceived as fraud and/or perjury. Attorney Rocco reported to Defendants Rosen, Flanz and Doss, not to MediSys General Counsel. Plaintiff continued to object and demand to brief the Trustees. Defendant Rosen stated that Attorney Rocco did not want the Plaintiff to supervise him.

This allegation refers to Plaintiff's ethical responsibilities and is not protected from disclosure by the attorney client privilege. The fact is not protected information by the attorney client privilege. There is no attorney relationship between Plaintiff and Rosen. Rosen is represented by separate counsel in this matter. MediSys is not seeking legal  advice from the Plaintiff nor is she providing legal advice.

20

88. Paragraph 176 reads: Plaintiff was troubled with the continuing breach of the Chinese wall, and the poor perception the US Attorney could have of MediSys, if they learned of the breach of the Chinese wall; the service currently being provided by outside counsel on the investigation, consulting and taking directives from the subjects of the investigation, who were conflicted and retained separate counsel for just that reason; the diminution of the General Counsel's role to the hospitals in the investigation; apart from the obvious impropriety of threats aimed at intimidating in order to coerce abdication of fiduciary duties to the Hospitals, and the potential these situations create for jeopardizing the interests of MediSys.

        These allegations do not contain information protected by the attorney client privilege. There is no attorney client relationship between the parties, legal advice is not sought by MediSys from Plaintiff nor is advice given to them.

89. Plaintiff was never in the course of the criminal investigation Rosen's, Flanz's, Doss' or any of the other executives' attorney. The named subject Executives and other employees were each represented by separate counsel in the matter.

90. I also submit that based upon the above if there was any privilege Defendants waived it based upon submitting email from the Plaintiff to Rosen to the US attorney, and the US attorney submitting it into evidence waived any privilege; that declarations from the Defendants themselves, advising the Department of Heath that they waived the attorney client privilege during an interview with the US Attorney; and by speaking with and sharing documents with third parties about this matter, sharing documents with agencies not related to the investigation and accounting firms and consultants not hired to handle the investigation; they have waived any privileged.

91. Base upon the above, and the memo of law in support along with all of the publications, exhibits attached, I submit that the allegations contained in Plaintiff's Complaint does not violate the attorney client privilege, and that the Defendants whom had the burden to prove the privilege has failed to do so. By

failing to prove the privilege existed, they fail to show that the privilege was waived. Therefore the motion should be dismissed in its entirety with costs and sanctions.

Dated: April 1, 2010

Patrick W. Johnson, Esq.,

By: _____

Patrick W. Johnson, Esq.

Attorney for the Plaintiff

22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------x

Index No.: 28352/2009
Date Purchased:
November 9, 2009

Margaret Johnson

              Plaintiff,

**SUMMONS WITH NOTICE**

              v.

**Plaintiff designates Kings County**
as place of trial

MediSys Health Network, Brookdale Hospital Medical Center
Jamaica Hospital Medical Center,
Neighborhood Health Provider LLC,
Flushing Hospital Medical Center, David Rosen,
The Board of Trustees on MediSys Health Network,
The Board of Trustees of Jamaica Hospital Medical Center,
The Board of Trustees of Brookdale Hospital Medical Center
The Board of Directors of Neighborhood Health Providers,
The Board of Trustees of Flushing Hospital, Neil Foster Phillips,
Judge Tim Dufficy, Dr. Alvin Kahn, Geraldine M. Chapey, Ph.D.,
Mr. Joseph Ferrara, Robert W. Koop, Dr. Anthony DiMaria,
Dr. Geoffrey Doughlin, Dr. Hector Estepan, Dr. Antonietta Morisco,
Douglas W. Singer, Archie Spigner, John Marus, Edward Birnbaum, Hugh Greenberg,
Ascher L. Mestel, MD, R.C. Hugh Nelson, Richard Radutzky,
Lowell M. Rubin, Alex Rovt, David I. Schachne, Edwin L. Schulman,
Al Silverman, Allen B. Swerdlick, David R. Wilkes, Laurence C. Zale
Honorable Darrell Towns, Steven Plotnick, Esq., Diane Simon,
Richard J. Fogler, MD, Vito Buccellato, Bruce Flanz, Mounir Doss, Steve Bory
Mr. Michael J. Russo, Mr. Robert Reichenbach , Mr. Dino Guiducci,
Charles Balducci, MD, Mr. Anthony Federici, Mr. Henry E. Froebel,
Victor Guarneri, MD, Mr. Max Kupferberg, Ahamed Moideen, MD,
Alvin I. Orlian, DDS, Mr. David P. Pagan, Mr. John E. Roe, Sr., William Lynch,
Chris Y. Hwang, Peter Barra, MD, Victor Orioli, MD, NHP OF INDIANA LLC ROYAL
HEALTH CARE OF LONG ISLAND LLC d/b/a ROYAL HEALTH CARE LLC, ROYAL
HEALTH CARE DATA CENTER LLC, NHP HOLDINGS LLC LINROC COMMUNITY
SERVICES CORPORATION, INC, THE SCHULMAN AND SCHACHNE INSTITUTE FOR
NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION,
ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN
FOUNDATION, INC., ROCKREAL CORPORATION, BROOKDALE FAMILY CARE
CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING
COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND
CORPORATION, LCSC HOLDINGS, INC., JAMAICA HOSPITAL STAFF HOUSING CO., JAMAICA
HOSPITAL MEDICAL CENTER DIAGNOSTIC & TREATMENT CENTER CORP., JAMAICA HOSPITAL
MEDICAL CENTER DIAGNOSTIC & TREATMENT CENTER CORP., JAMAICA HOSPITAL NURSING
HOME CO., INC, HITECH MEDICAL EQUIPMENT, INC., FRR RECOVERY, TJH MEDICAL SERVICES, PC,

**Basis for Venue:** Defendant
Brookdale's principal place
of business

1

Tel: (718) 745-5530
Fax: (718) 833-9500
Email address:patrickjohnson@aol.com

*Attorneys for Plaintiff*

*Defendant's addresses*

Neil Foster Phillips, Chairman of the Board
139 Maxson Avenue
P.O. Box 432
Freeport,NY 11520-0432

Judge Timothy J. Dufficy
216-27 12ᵗʰ Avenue
Breezy Point, NY 11697

Geraldine M. Chapey, Ph.D.
Trinity Services
104-02 Rockaway Beach Boulevard
Rockaway Beach, NY 11694

Anthony DiMaria, M.D.
Medical Director, Trump Pavilion
90-28 Van Wyck Expressway
        Jamaica, NY 11418

Geoffrey Doughlin, M.D.
Chairman
Department of Emergency Medicine
Jamaica Hospital
Extension 6070
8900 Van Wyck Expressway
Jamaica, NY 11418

Hector Estepan, M.D.
29 Davenport Avenue
Apartment 2J
New Rochelle, NY 10805

Mr. Joseph Ferrara
Ferrara Brothers Building Materials Corp.
120-05 31ˢᵗ Avenue
Flushing, NY 11354

3

Mr. Robert W. Koop
Senior Vice President
Morgan Stanley Dean Witter
290 Broad Hollow Road
4th Floor
Melville, NY  11747

Antonietta Morisco, M.D.
President
Medical Staff
Jamaica Hospital
Extension 6087
8900 Van Wyck Expressway
Jamaica, NY  11418

Mr. Douglas W. Singer
Coldwell Banker
600 Plandome Road
Manhasset, NY  11030

The Honorable Archie Spigner
112-10 175th Street
St. Albans, NY  11412

John Marus

4

Mr. Edward Birnbaum
110-11 Queens Blvd. - Apt. 16A
Forest Hills, NY 11375

Mr. Hugh Greenberg
150 East 69th Street - 15B
New York, NY 10021

Alvin I. Kahn, MD
730 HungryHarbor Road
No. Woodmere, NY 11581

Mr. Edwin L. Schulman
Alixandre Furs, Inc.
150 West 30th Street
New York, NY 10001

Lawrence A. Mestel, M.D.
300 Mayfair Drive North
Brooklyn, NY 11234

Bishop R.C. Hugh Nelson
Church of God of East Flatbush
409 East 95th Street
Brooklyn, New York 11212

Steven E. Plotnick, Esq.
950 Third Avenue – 25th Floor
New York, New York 10022

Mr. Richard Radutzky
Joyva Corporation
53 Varick Avenue
Brooklyn, NY 11237

Vito Buccellato
80 Carpenter Ave
Staten Island, NY 10314

Mr. Alex Rovt
IBE Trade Corp.
950 Third Avenue – 25th Floor
New York, New York 10022

Mr. Lowell M. Rubin
141 Argyle Road
Brooklyn, NY 11218

Mr. David I Schachne
Fairfield Properties
66 Commack Road
Commack, NY 11725

Mr. Al Silverman
710 Park Lane
No. Woodmere, NY 11581

Mr. Allen B. Swerdlick
Kamco International
80 21st Street
Brooklyn, NY 11232

Assemblyman Darryl C. Towns
840 Jamaica Avenue
Brooklyn, New York 11208

Mr . David Wilkes
One Kensington Gate
Great Neck, NY 11021

Mr. Laurence Zale
340 East 80th Street
New York, NY 10021

David P. Rosen
President & CEO
Jamaica Hospital

Bruce J. Flanz
Executive Vice President &
COO
Jamaica Hospital

Mr. Michael J. Russo
Chairman

Home
86-83 Marengo Street
Holliswood, NY 11423

Office & Mailing Address
Northeastern Aviation Corp.
65-01 Fresh Meadow Lane,   Fresh Meadows, NY 11365

5

Mr. Robert Reichenbach          <u>Home & Mailing Address</u>
Secretary                       172 Whistler Road
                                Manhasset, NY 11030


Mr. Dino Guiducci               <u>Business & Mailing Address</u>
                                Regency Enterprises
                                Flushing, NY 11355

                                <u>Home</u>
                                46 Short Drive
                                Manhasset, NY 11030

Charles Balducci, MD            <u>Home & Mailing Address</u>
                                111 Malba Drive
                                Malba, NY 11357

                                <u>Office</u>
                                38-25 Parsons Blvd.
                                Flushing, NY 11354

Mr. Anthony Federici            <u>Business & Mailing Address</u>
                                Parkside Restaurant
                                107-01 Corona Avenue
                                Corona, NY 11368

Mr. Henry E. Froebel            <u>Home & Mailing Address</u>
                                69-10 108th Street                      Forest Hills, NY

11375

Victor Guarneri, MD             <u>Home & Mailing Address</u>
                                217-07 40th Avenue
                                Bayside, NY 11361

Mr. Max Kupferberg              <u>Office & Mailing Address</u>
                                Kepco, Inc.
                                Flushing, NY 11352

                                <u>Home</u>
                                29-05 214th Place
                                Bayside, NY 11360

Ahamed Moideen, MD              <u>Home & Mailing Address</u>
                                20 Old Shelter Rock Road
                                North Hills, NY 11576


6

|  | office 146-01 45th Avenue, S. 406<br>Flushing, NY 11355 |
|---|---|
| Alvin I. Orlian, DDS | Home & Mailing Address<br>17 Hampton Road<br>Great Neck, NY 11020 |
| Mr. David P. Pagan | Home & Mailing Address<br>152-18A Union Turnpike, Apartment 1E<br>Flushing, NY 11367 |
|  | Office<br>Southside United Housing Dev. Fund Corp<br>213 South 4th Street<br>Brooklyn, NY 11211 |
| Mr. John E. Roe, Sr. | Office & Mailing Address<br>City Underwriting Agency, Inc.<br>2001 Marcus Avenue, S. W180<br>Lake Success, NY 11042 |
|  | Home<br>206-15 Emily Road ,Bayside, NY 11366 |
| David P. Rosen<br>President & CEO | Jamaica Hospital Medical Center<br>8900 Van Wyck Expressway<br>Jamaica, NY 11418-2897 |
| Bruce J. Flanz<br>Exec. VP & COO | Jamaica Hospital Medical Center<br>8900 Van Wyck Expressway<br>Jamaica, NY 11418-2897 |
| Mounir F. Doss<br>Exec. VP & CFO | c/o JHMC, 4N, Finance |
| William Lynch<br>VP, Professional &<br>Regulatory Affairs | Jamaica Hospital Medical Center<br>8900 Van Wyck Expressway<br>Jamaica, NY 11418-2897 |
| Mr. Chris Y. Hwang |  |
| Peter Barra, MD<br>Medical Director | Office & Mailing Address<br>32-11 Francis Lewis Blvd.<br>Flushing, NY 11358 |

Victor Orioli, MD            <u>Office & Mailing Address</u>
President, Med. Staff Society Department of Case Management
Flushing Hospital

NHP/Royal Directors – see above

David Rosen - Chairman
Bruce Flanz
Dr. Alvin Kahn
Vito Buccellato
Mounir Doss
Steve Bory - President

| ORGANIZATION NAME | TYPE | ADDRESS |
|---|---|---|
| LINROC COMMUNITY SERVICES CORPORATION, INC. | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE BROOKDALE HOSPITAL MEDICAL CENTER | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc. | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE SAMUEL & BERTHA SCHULMAN INSTITUTE FOR NURSING & REHABILITATION FUND, INC. | Not-for-Profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| AMBOY PROPERTIES CORPORATION | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE LINDEN FOUNDATION | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| ROCK REAL CORPORATION | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| URBAN STRATEGIES/BROOKDALE FAMILY CARE CENTER, INC. | Not-for Profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| BROOKDALE FAMILY CARE CENTERS, INC. | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC. | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| LCSC HOLDINGS, INC. | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |

8

| | | |
|---|---|---|
| BHMC ENTERPRISES, INC | For-Profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| THE BROOKDALE RESEARCH FOUNDATION | Not-for-profit | One Brookdale Plaza, Brooklyn, NY 11212 |
| NEIGHBORHOOD HEALTH PROVIDERS LLC | For-profit | 521 Fifth Ave., NY., NY 10175 |
| ROYAL HEALTH CARE LLC | For-profit | 521 Fifth Ave., NY., NY 10175 |
| JAMAICA HOSPITAL MEDICAL CENTER | Not-for-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| MEDISYS HEALTH NETWORK, INC. | Not-for-Profit | 2900 Van Wyck Expressway, Jamaica, NY 11418 |
| JAMAICA HOSPITAL STAFF HOUSING CO. | Not-for Profit | 89-06 135th St. Jamaica, NY. 11418 |
| JAMAICA HOSPITAL MEDICAL CENTER DIAGNOSTIC & TREATMENT CENTER CORP. | Not-for-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| INT'L ASSOC. OF MEDICAL BIKE UNITS | Not-for Profit | 8806 Van Wyck Expressway, Jamaica, NY 11418 |
| VWE PROPERTIES CORP. | Not-for-Profit | 8806 Van Wyck Expressway, Jamaica, NY 11418 |
| MEDISYS VENTURES INC | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| MEDISYS SERVICES CORP. | Not-for Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| JAMAICA HOSPITAL NURSING HOME CO., INC. | Not-for-Profit | 90-28 Van Wyck Expressway, Jamaica, NY 11418 |
| NHP OF INDIANA LLC ROYAL HEALTH CARE OF LONG ISLAND LLC d/b/a ROYAL HEALTH CARE LLC | | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| HITECH MEDICAL EQUIPMENT, INC. | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| MHN PROPERTIES, INC. | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| MEDISYS IPA LLP | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| MEDISYS MANAGEMENT LLC | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| QUEENS REPLACEMENT LLC | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| NHP HOLDINGS LLC | For Profit | 8900 Van Wyck, Expressway Jamaica, NY 11418 |

9

| ROYAL HEALTH CARE DATA CENTER LLC | For profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| --- | --- | --- |
| FLUSHING HOSPITAL MEDICAL CENTER | Not-for Profit | 45th Ave. at Parsons Blvd., Flushing, NY 11355 |
| MEDISYS HOME CARE, INC. | Not-for-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| COMPREHENSIVE THERAPY SERVICES | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| FRR RECOVERY | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |
| TJH MEDICAL SERVICES, PC | For-Profit | 8900 Van Wyck Expressway, Jamaica, NY 11418 |

action; I have read the foregoing in the within and know the contents thereof;
the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters
I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true. under the penalties of perjury.
Dated:

..........................................................................
The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF  KINGS                    ss.:

I, the undersigned, being duly sworn, depose and say: I am       **Plaintiff**

☒ Individual     in the action; I have read the foregoing     **Summons with Notice**
   Verification
                                                         and know the contents thereof; the same is true to my own knowledge, except
                 as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ Corporate     the                          of
   Verification
                 a
                                                corporation and a party in the within action; I have read the foregoing
                                          and know the contents thereof; and the same is true to my own knowledge,
       except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This
       verification is made by me because the above party is a corporation and I am an officer thereof.
The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on  NOvember 9, 2009

KATHLEEN JOHNSON
Commissioner of Deeds
City of New York No. 2-3008
Certificate Field in Kings Co.
Commission Expires Jan. 1, 20 11

..........................................................................
The name signed must be printed beneath

Margaret Johnson

STATE OF NEW YORK, COUNTY OF                         ss.:       (If more than one box is checked—indicate after names type of service used
I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On

☐ Service        I served the within
   By Mail       by mailing a copy to each of the following persons at the last known address set forth after each name below.

☐ Personal      by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served
   Service on    to be the person mentioned and described in said papers as *a party therein;*
   Individual

☐ Service by    by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL
   Electronic    at the E-Mail address set forth after each name below. which was designated by the attorney for such purpose, and by mailing a
   Means         copy to the address set forth after each name.

☐ Overnight     by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name
   Delivery      below.
   Service

worn to before me on

..........................................................................
The name signed must be printed beneath

ALLEN H. ROTH

SUITE 4200 • 767 FIFTH AVENUE
NEW YORK, NEW YORK 10153
PHONE: (212) 572-6954 • FAX: (212) 572-4329
email: roth2@ix.netcom.com

September 25, 2009

Dr. Alvin Kahn
Chairman
Brookdale University Hospital & Medical Center
Flatbush Avenue & Claredon Road
Brooklyn, New York  11212

Dear Alvin,

Hereby, I submit my resignation from the Board of Brookdale Hospital Medical Center: effective immediately.

There are several reasons for my decision to resign. On top of this list is the feeling that even though I am a member of the Board, I am treated like a spectator.

Earlier this year, I remember a Board meeting that was about to close without any discussion of the ongoing investigation of Assemblyman Tony Seminerio's relationship with Brookdale. The investigation had received air-time on television and in the press, but the Brookdale Board did not receive a briefing. I attempted to force this discussion by addressing the Board's Counsel but Dave Rosen ordered the Counsel not to respond. He then proceeded to demean Mr. Seminerio.

Since the advent of Mr. Rosen, the Board has played an infinitesimal role in the running of the institution. I joined the Board because of the wonderful care Brookdale gave to my dying mother. On occasion, I was able to assist Brookdale with my contacts in Albany. But after the merger with Jamaica Hospital, my sporadic involvement in Brookdale affairs came to a complete end.

Since Brookdale's management has no need for my services and has effectively kept me in the dark as to what is happening at the Institution, I have decided to resign.

Page 2.

My last contact with Mr. Rosen's office is indicative of my frustration with Brookdale's management. The other day, my office received a call from Mr. Rosen's office about a Board Meeting the following morning. When I said I would change my schedule to attend, Mr. Rosen's office said there was no need to come.

Frankly, I have more constructive things I can do with my time than play games with David Rosen and Brookdale.

All the best,

Sincerely,

Allen Roth

# 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------x

MARGARET M. JOHNSON,

              Plaintiff,                              Index No. 28352/09

              v.

MEDISYS HEALTH NETWORK, INC.,              **VERIFIED COMPLAINT**
BROOKDALE HOSPITAL MEDICAL CENTER,
JAMAICA HOSPITAL MEDICAL CENTER,         **DEMAND FOR JURY**
FLUSHING HOSPITAL MEDICAL CENTER,
DAVID P. ROSEN,   BRUCE J. FLANZ
The Board of Trustees on MediSys Health Network,
The Board of Trustees of Jamaica Hospital Medical Center,
The Board of Trustees of Brookdale Hospital Medical Center
The Board of Directors of Neighborhood Health Providers,
The Board of Trustees of Flushing Hospital, Neil Foster
Phillips, Judge Tim Dufficy, Dr. Alvin Kahn, Geraldine M.
Chapey, Ph.D., Mr. Joseph Ferrara, Robert W. Koop, Dr.
Anthony DiMaria,  Dr. Geoffrey Doughlin, Dr. Hector
Estepan, Dr. Antonietta Morisco,  Douglas W. Singer, Archie
Spigner, John Marus, Edward Birnbaum, Hugh Greenberg,
L. Mestel, MD, R.C. Hugh Nelson, Richard Radutzky, Lowell
M. Rubin, Alex Rovt, David I. Schachne, Edwin L.
Schulman,  Allen B. Swerdlick, David R. Wilkes, Laurence
C. Zale, Honorable Darrell Towns, Steven Plotnick, Esq.,
Diane Simon, Richard J. Fogler, MD, Vito Buccellato,
Mounir Doss, Steve Bory, Mr. Michael J. Russo, Mr. Robert
Reichenbach ,  Mr. Dino Guiducci, Charles Balducci, MD,
Mr. Anthony Federici, Mr.  Victor Guarneri, MD, Mr. Max
Kupferberg, Ahamed Moideen, MD,  Alvin I. Orlian, DDS,
Mr. David P. Pagan, Mr. John E. Roe, Sr., William Lynch,
Chris Y. Hwang, Peter Barra, MD, Victor Orioli, MD, NHP
OF INDIANA LLC ROYAL HEALTH CARE OF LONG
ISLAND LLC d/b/a ROYAL HEALTH CARE LLC, ROYAL
HEALTH CARE DATA CENTER LLC, NHP HOLDINGS
LLC LINROC COMMUNITY SERVICES CORPORATION,
INC, THE SCHULMAN AND SCHACHNE INSTITUTE
FOR NURSING AND REHABILITATION, Inc., AMBOY
PROPERTIES CORPORATION, ROCKREAL
CORPORATION, AMBOY PROPERTIES
CORPORATION, THE LINDEN FOUNDATION, INC.

ROCKREAL CORPORATION, BROOKDALE FAMILY
CARE CENTERS, INC., THE BROOKDALE HOSPITAL
CENTER HEGEMAN HOUSING COMPANY, INC., THE
BROOKDALE RESIDENCE HOUSING DEVELOPMENT
FUND CORPORATION, LCSC HOLDINGS, INC.,
JAMAICA HOSPITAL STAFF HOUSING CO., JAMAICA HOSPITAL
MEDICAL CENTER DIAGNOSTIC & TREATMENT CENTER CORP.,
JAMAICA HOSPITAL MEDICAL CENTER DIAGNOSTIC &
TREATMENT CENTER CORP., JAMAICA HOSPITAL NURSING
HOME CO., INC, HITECH MEDICAL EQUIPMENT, INC., FRR
RECOVERY, TJH MEDICAL SERVICES, PC, MEDISYS
MANAGEMENT LLC, COMPREHENSIVE THERPY SERVICES
MEDISYS VENTURES INC, , MEDISYS SERVICES CORP,
JAMAICA HOSPITAL NURSING HOME CO., INC. MEDISYS
MANAGEMENT LLC,  MHN PROPERTIES, INC MEDISYS IPA LLP,
MEDISYS HOME CARE, INC. VWE  PROPERTIES CORP., QUEENS
REPLACEMENT LLC, INT'L ASSOC. OF MEDICAL BIKE UNITS

------------------------------------------------------------------x
Plaintiff, MARGARET JOHNSON, by and through Plaintiff's attorney, PATRICK W.
JOHNSON, P.C., complaining of the defendants herein sets forth and alleges the following, upon
information and belief.

## THE PARTIES

1.      Plaintiff Margaret Johnson is a resident of New York County.  Plaintiff is an

Officer of the Court, in good standing, in the State of New York.   At all times relevant herein,

Plaintiff was an employee within the meaning of the NYSHRL, NYCHRL and federal law and

was protected against discrimination in employment and retaliation on the basis of Plaintiff sex,

female.

2.      Defendant MediSys Health Networks, Inc. is a nonprofit entity organized under

the laws of New York, with its principal place of business in Queens County. MediSys Health

Network, established in 1995 as a not-for-profit, 501(c) (3) organization; is the sole corporate

member of several not-for-profit, 501(c) (3) health care provider organizations and other health-

related entities, and is the sole shareholder of a for-profit holding company all named in the

caption. ("MediSys"). ( Attached Corporate Organizational Chart)  MediSys controls all of the

named Defendants corporations. MediSys has control over of all of its member corporations, by

virtue of MediSys' powers to remove the entire Board and transfer funds.  Defendant is an

2

employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

3.      Defendant Brookdale Hospital Medical Center *aka* Brookdale University Hospital and Medical Center,   ("Brookdale Hospital") is a 501(c) 3, tax exempt corporation, nonprofit entity organized under the laws of New York, with its principal place of business in Kings County. Brookdale receives federal and state funds and is bound by such laws. It is licensed by the New York State Department of Health, Article 28, and is the sole corporate member of MediSys. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

4.      Defendant Jamaica Hospital Medical Center ("Jamaica Hospital") is a 501(c) 3, tax exempt, nonprofit entity organized under the laws of New York, with its principal place of business in Queens County. Jamaica Hospital receives federal and state funds and is bound by such laws.  Jamaica Hospital t has a 50% ownership interest in Neighborhood Health Providers, LLC, and a for-profit prepaid health service plan.  Jamaica Hospital is licensed by New York State Department of Health, under Article 28. Its sole corporate member is MediSys. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

5.      Defendant Flushing Hospital Medical Center ("Flushing Hospital") is a 501(c) 3, tax exempt, nonprofit entity organized under the laws of New York, with its principal place of business in Queens County. Flushing Hospital receives federal and state funds and is bound by such laws. It is licensed by the New York State Department of Health, under Article 28. Its sole corporate member is MediSys. Rainbow Pharmacy is the sole member of Flushing Hospital. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

6.      Neighborhood Health Providers, LLC, (NHP) is a for-profit prepaid health service plan, which also offers a Medicare managed plan; Linroc Community Service Corporation and Jamaica Hospital Medical Center are each a 50%  shareholder of this entity. It is licensed by the New York State Department of Health, New York State Insurance Department

3

and organized under the laws of New York. Its principal place of business is Queens County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

7.     Defendant David P. Rosen is the President and Chief Executive Officer of Defendant MediSys, Jamaica Hospital, Brookdale Hospital, Flushing Hospital and the other named Defendants, ("Rosen").  He is Chairman of the Board of Directors of Neighbor Health Providers, and is either, or both a member of the Board of Directors of all the named entities or an Officer. He resides at 28 Rolling Hills Lane, Harrison, New York, 10528.

8.     At all relevant times herein, Defendant Rosen was Plaintiff's supervisor, in control of Plaintiff's employment, and in a position to discriminate and retaliate against Plaintiff in respect of the terms, conditions and privileges of Plaintiff employment in violation of NYSHRL and NYCHRL.

9.     At all relevant times herein, Defendant, Rosen is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such unlawful behavior.

10.     Defendant Bruce Flanz is the Executive Vice President of MediSys, Jamaica Hospital, Brookdale Hospital, Flushing Hospital and the other co- Defendants, and is a member of the Board of Directors of Neighbor Health Providers, INT'L ASSOC. OF MEDICAL BIKE UNITS, an Officer of the all the MediSys defendants corporations located in Kings county, and a member of the Board of Directors or an Officer of all the MediSys located in Queens County. He resides at 2 Cosmo Lane, New City, New York, 10956.

11.     At all relevant times herein, Defendant Bruce Flanz is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such

4

unlawful behavior.

12.     MediSys' Board of Trustees has the obligation and responsibility for the management of the corporations.

13.     Neil Foster Phillips is Chairman of the Board of the Board Directors of MediSys, Jamaica Hospital, Jamaica Family Care Centers. He resides at 139 Maxson Ave., P.O. Box 432, Freeport, NY.

14.     At all relevant times herein, Defendant Neil Phillips was Plaintiff's supervisor, in control of Plaintiff's employment, and in a position to discriminate and retaliate against Plaintiff in respect of the terms, conditions and privileges of Plaintiff employment in violation of NYSHRL and NYCHRL.

15.     At all relevant times herein, Defendant Neil Phillips is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such unlawful behavior.

16.     Defendant Timothy J. Dufficy is a member of the Boards of Director of MediSys, Jamaica Hospital, Jamaica Family Care Centers. He resides at 216-27 12th Avenue, Breezy Point, NY 11697.

17.     At all relevant times herein, Defendant Timothy Dufficy is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such unlawful behavior.

18.     Geraldine M. Chapey, Ph.D. He is a member of the Boards of Director of MediSys, and Jamaica Hospital. He resides at Trinity Services, 104-02 Rockaway Beach

5

Boulevard, Rockaway Beach, NY 11694.

19.     Anthony DiMaria, M.D. is a member of the Boards of Director of MediSys, and Jamaica Hospital. He is Medical Director of Trump Pavilion, and the Schulman & Schachne Institute for Long Term Care, (SSI), and Jamaica Family Care Centers.  He resides at 100 Ninth Street, Garden City, NY 11530.

20.     Geoffrey Doughlin, M.D. is a member of the Boards of Director of MediSys, and Jamaica Hospital. He is the Chairperson of Department of Emergency Medicine, at Jamaica Hospital. He resides at 96 Barud Road, Scarsdale, NY 10583.

21.     Hector Estepan, M.D., is a member of the Boards of Director of MediSys and Jamaica Hospital. He resides at 29 Davenport Avenue, New Rochelle, NY  10805.

22.     Mr. Joseph Ferrara is a member of the Boards of Director of MediSys, and Jamaica Hospital. He resides at 5 River Avenue, Rockville Centre, NY 11570.

23.     Mr. Robert W. Koop is a member of the Boards of Director of MediSys, and Jamaica Hospital.  He resides at 10 Concord drive, South, Fort Solanga, NY 11768.

24.     Antonietta Morisco, M.D. is a member of the Boards of Director of MediSys, and Jamaica Hospital. Plaintiff is the President Medical Staff, Jamaica Hospital, 8900 Van Wyck Expressway, Jamaica, NY  11418. Plaintiff resides in Oyster Bay, Long Island, New York.

25.     Mr. Douglas W. Singer is a member of the Boards of Director of MediSys, and Jamaica Hospital.  He resides in Queens County.

26.     The Honorable Archie Spigner is a member of the Boards of Director of MediSys Health Network, and Jamaica Hospital. He resides in Queens County.

6

27.    John Marus is a member of the Boards of Director of MediSys Health Network, Jamaica Hospital, MediSys Family Care Centers. He resides 156-28 92nd Street, Rockwood Park, NY 11414.

28.    The Defendants Trustees, jointly and individually, at all relevant times herein, are individuals who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such unlawful behavior.

29.    At all relevant times herein, Defendants Trustees, jointly and individually, were Plaintiff's supervisor, in control of Plaintiff's employment, and in a position to discriminate and retaliate against Plaintiff in respect of the terms, conditions and privileges of Plaintiff employment in violation of NYSHRL and NYCHRL.

30.    Mounir Doss is the Executive Vice President & CFO of Defendants MediSys, Jamaica Hospital, Brookdale Hospital, Flushing Hospital and the other named co-Defendants corporations. ("Doss"). He is a member of the Board of Directors of Neighbor Health Providers. He is an Officer of all the MediSys defendants located in Kings County. He is either a Director of the remaining defendants or an Officer of the corporation. He resides at 369 Steward Ave. Garden City, NY 11530

31.    At all relevant times herein, Defendant Mounir Doss is an individual who either aids, abets, incites, compels or coerces unlawful discriminatory practices and retaliation in violation of NYSHRL and NYCHRL and who should have known better than to engage in such unlawful behavior. Plaintiff reported all inappropriate, discriminatory acts to Doss. No remedial action was taken against Rosen or Flanz.

32.    Edward Birnbaum is a member of the Board of Directors/Trustees of The Brookdale Hospital Medical Center, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN

7

FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, He resides in Forest Hills, NY 11375.

33.     Hugh Greenberg is a member of the Board of Directors/Trustees of The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, LCSC HOLDINGS, INC. He resides at 150 East 69th Street, New York, NY 10021.

34.     Dr. Alvin Kahn, ("Kahn") is the Chairperson of the Board of Directors/Trustees of The Brookdale Hospital, LINROC COMMUNITY SERVICES CORPORATION, INC, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, INC. He resides at 730 Hungry Harbor Road, No. Woodmere, NY, 115821.

35.     Dr. A. Lawrence is a member of the Board of Directors/Trustees of the Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE

8

HOUSING DEVELOPMENT FUND CORPORATION, He resides at 300 Mayfair Drive North, Bklyn, NY 11234.

36.     Bishop R.C Nelson Church of God of East Flatbush is a member of the Board of Trustees of THE BROOKDALE HOSPITAL CENTER . He resides at 653 Park Lane, Valley Stream, NY 11581.

37.     Steve Plotnick is a member of the Board of Directors/Trustees of The Brookdale Hospital Medical Center. He resides at 41-42 Rys Terrace, Fairlawn, New Jersey 07410.

38.     Richard Radutzky is a member of the Board of Directors/Trustees of The Brookdale Hospital Medical Center, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION . He resides at 270 Chester Drive, Roslyn, NY 11576-2325.

39.     Alex Rovt is a member of the Board of Trustees of The Brookdale Hospital Medical Center and Linroc Community Service Corporation, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, INC. He resides at 2346 East 66th Street, Brooklyn, NY 11234.

40.     Lowell Rubin is a member of the Board of Directors/Trustees of The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND

9

REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION. He resides at 141 Argyle Road, Brooklyn, New York 11218.

41.   David Schachne is a member of the Board of Directors/Trustees of LINROC COMMUNITY SERVICES CORPORATION, INC, The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION.  He resides at 175 Fairway View Drive, Commack, New York 11725.

42.   Edwin Schulman is a member of the Board of Directors/Trustees of LINROC COMMUNITY SERVICES CORPORATION, INC, The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION. He resides at 983 Park Avenue, New York, New York.

43.   Allen Swerdlick is a member of the Board of Directors/Trustees of The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL

10

CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION. He resides at 535 East 86th Street, New York, NY 10028.

44. David Wilkes is a member of the Board of Directors/Trustees of The Brookdale Hospital, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, INC. He resides at 1 Kensington, Great Neck, New York.

45. Larry Zale is a member of the Board of Directors/Trustees of LINROC COMMUNITY SERVICES CORPORATION, INC, THE SCHULMAN AND SCHACHNE INSTITUTE FOR NURSING AND REHABILITATION, Inc., AMBOY PROPERTIES CORPORATION, ROCKREAL CORPORATION, AMBOY PROPERTIES CORPORATION, THE LINDEN FOUNDATION, INC., BROOKDALE FAMILY CARE CENTERS, INC., THE BROOKDALE HOSPITAL CENTER HEGEMAN HOUSING COMPANY, INC., THE BROOKDALE RESIDENCE HOUSING DEVELOPMENT FUND CORPORATION, INC. He resides in New York, NY 10021.

46. Congressman Darrell Towns is a member of the Board of Trustees of Brookdale Hospital. He resides in Kings County.

47. Mr. Michael J. Russo is the Chairman of the Board of Trustees of Flushing Hospital. He resides at, 86-83 Marengo Street, Holliswood, NY 11423.

11

48.     Mr. Robert Reichenbach is a member and secretary of the Board of Flushing Hospital. He resides at 172 Whistler Road, Manhasset, NY 11030 .

49.     Mr. Dino Guiducci is a member of the Board of Flushing Hospital. He resides at 46 Short Drive, Manhasset, NY 11030.

50.     Charles Balducci, MD, a member of the Board of Flushing Hospital. He resides at 111 Malba Drive, Malba, NY 11357.

51.     Mr. Anthony Federici is a member of the Board of Flushing Hospital. He place of business is Parkside Restaurant,     107-01 Corona Avenue, Corona, NY 11368.

52.     Victor Guarneri, MD is a member of the Board of Flushing Hospital. He resides at, 217-07 40th Avenue, Bayside, NY 11361.

53.     Mr. Max Kupferberg is a member and secretary of the Board of Flushing Hospital. He resides at 29-05 214th Place, Bayside, NY 11360.

54.     Ahamed Moideen, MD, is a member of the Board of Flushing Hospital. He resides at 20 Old Shelter Rock Road, North Hills, NY 11576.

55.     Alvin I. Orlian, DDS is a member of the Board of Flushing Hospital. He resides at 17 Hampton Road, Great Neck, NY 11020.

56.     Mr. David P. Pagan is a member and secretary of the Board of Flushing Hospital. He resides at   152-18A Union Turnpike, Apartment 1E, Flushing, NY 11367.

57.     Mr. John E. Roe, Sr., is a member of the Board of Flushing Hospital. He resides at 206-15 Emily Road ,Bayside, NY 11366.

12

58.     Peter Barra, MD,  is the Medical Director and member of the Board of Flushing Hospital. He resides at 32-11 Francis Lewis Blvd., Flushing, NY 11358.

59.     Victor Orioli, MD is the President, Med. Staff Society, Department of Case Management at Flushing Hospital. He is also a member of the Board of Trustees. He resides in Flushing NY..

60.     William Lynch is the Vice President of Jamaica Hospital, Flushing Hospital a member of the Board of Directors of various MediSys entities. He resides at 24 Sandra Drive, Hauppauge, NY 11788.

61.     Mr. Chris Y. Hwang is a member of the Board of Directors of Flushing Hospital. He resides in Flushing, New York.

62.     The Jamaica Hospital Nursing Home Co., Inc. (Trump Pavilion) is a  voluntary, 501(c) 3, tax exempt, nonprofit,  residential healthcare facility,  organized under the laws of New York, with its principal place of business in Queens County. The Nursing home receives federal and state funds and is bound by such laws. It is licensed by the New York State Department of Health, and is the sole corporate member of MediSys Health Network Inc. Defendant  is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

63.     The Schulman and Schachne Institute for Nursing and Rehabilitation, Inc. (SSI) is a  voluntary, 501(c) 3, tax exempt, nonprofit,  residential healthcare facility,  organized under the laws of New York, with its principal place of business in Kings County. The Nursing home receives federal and state funds and is bound by such laws. It is licensed by the New York State Department of Health, and is the sole corporate member of MediSys Health Network Inc. Defendant  is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

64.     Brookdale Residence Housing Company *aka* The Arlene & David Schlang

13

Pavilion, is a not-for-profit, tax exempt, housing facility. It is organized under the state of New York, with its principal place of business in Kings County. Its sole corporate member is MediSys Health Network Inc. It receives both federal and state funding. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

65.     The Jamaica Hospital Medical Center Diagnostic and Treatment Center Corporation, d/b/a MediSys Family Care Centers (MFCC) is a not-for-profit Diagnostic and Treatment Center . It is organized under the State of New York. Its licensure is by the New York State Department of Health, Article 28 and receives federal and state funding. Its sole corporate member is MediSys Health Network Inc. Its principal place of business is Queens County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

66.     Brookdale Family Care Centers, Inc. (BFCC) is a not-for-profit, tax exempt Diagnostic and Treatment Center with its principal place of business in Kings County. It is organized under the State of New York and receives federal and state funding. Its licensure is by the New York State Department of Health, Article 28. Its sole corporate member is MediSys Health Network Inc. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

67.     Queens Replacement LLC is a chronic renal dialysis center, 37.5% of which is owned by MediSys Services Corporation, a not-for-profit holding corporation established for the purpose of holding an investment in this entity. It is established under the State of New York with its principal place of business in Queens. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

68.     MediSys Ambulance Service, Inc. is a not-for profit, tax exempted licensed ambulance company providing service for the MediSys' related companies. It is organized under the State of New York. Its licensure is the New York State Department of Health. It is the sole

14

corporate member is MediSys Health Network Inc . Its principal place of business is Queens. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

69. Rainbow Pharmacy, Inc. is a pharmacy which provides services to Flushing Hospital's patients. It is licensed by the New York State Pharmacy Board. Its sole corporate member is Flushing Hospital and Medical Center. It is organized by the State of New York, and its principal place of business is Queens County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

70. Hi-Tech Medical Equipment Inc. is a for-profit corporation that leases and sells durable medical equipment to patients of the MediSys' entities. It is a subsidiary of MediSys Ventures, Inc. Its sole corporate member is MediSys Ventures, Inc . It is organized by the State of New York with its principal place of business Queens County. Its Directors are all MediSys controlled employees; Bruce J. Flanz, Mounir Doss, Manzar Sassani, William Lynch and Fred Beekman. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

71. MediSys IPA LLC is a for-profit individual practice association. It is a subsidiary of MediSys Ventures, Inc. Sole Corporate Member: MediSys Ventures, Inc. Its Directors are all MediSys controlled employees. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

72. Amboy Properties Corporation is a not-for-profit, tax exempt corporation that owns and manages parking facilities for Brookdale Hospital. Its sole corporate member is MediSys Health Network Inc. It is organized under the laws of the State of New York, with its principal place of business Kings County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

73. VWE Properties is a not-for-profit corporation that owns and manages the

15

parking facilities for Jamaica Hospital. The parking garage is financed through a mortgage with IDA. Sole Corporate Member: MediSys Health Network Inc. The Directors are all MediSys controlled, employees. Its principal place of business is Queens County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

74.     Rockreal Corporation is a not-for-profit, tax exempt 501( c) (3) corporation that provides support to health care organizations through the management and development of real estate. Its sole corporate member is MediSys Health Network Inc. It is organized under the laws of the State of New York. Its principal place of business is Kings County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

75.     The Brookdale Hospital Center Hegeman Avenue Housing Company, Inc. is a not-for-profit, tax exempt 501( c)(2), company which provides housing for employees. Its sole corporate member is The Brookdale Hospital and Medical Center. Its principal place of business is Kings County. It is organized under the laws of the State of New York. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

76.     Jamaica Hospital Staff Housing Company, Inc. is a not-for-profit corporation that owns land, a building and equipment used by Jamaica Hospital and MediSys. It is organized under the laws of the State of New York, with its principal place of business Queens County. Its Board of Directors is made up of all Jamaica Hospital/MediSys controlled employees. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

77.     FRR Recovery, Inc. is a for-profit company that provides collection agency services to MediSys' healthcare provider entities; it is a subsidiary of MediSys Ventures, Inc. Its sole corporate member is MediSys Ventures, Inc. It is organized under the laws of the State of New York, with its principal place of business Long Island. It Board of Directors are made up of all Jamaica Hospital/MediSys controlled employees. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

16

78.     MediSys Management LLC is a for-profit management.company serving the members of TJH as well as other MediSys entities; it is a subsidiary of MediSys Ventures, Inc. Its sole corporate member is MediSys Ventures Inc. Its principal place of business is Queens County, and is organized under the laws of the State of New York. It Board of Directors is made up of all Jamaica/MediSys controlled employees. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

79.     Jamaica Psychiatric Services P.C. (JPS) is a for-profit single-specialty physician group providing professional psychiatry services to Jamaica, Flushing, and Brookdale Hospitals, Trump Pavilion, SSI, the affiliated D&TCs and ACP. Its sole member is MediSys Health Network. It was organized under the laws of the State of New York. It Board of Directors is made up of all Jamaica Hospital/MediSys controlled employees. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

80.     TJH Medical Services, P.C. (TJH) is a for-profit multi-specialty physician group providing services to MediSys hospitals, nursing homes and affiliates. It is fully controlled by Jamaica Hospital. TJH operates a corporate health division that provides occupational health services to businesses. It is the Management Service Organization of MediSys Management. It is organized by the state of New York with its principal place of business Queens. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

81.     Linroc Community Service Corporation (LCSC) is a not-for-profit holding company corporation that is sole member or a shareholder of MediSys Health Network Inc. It owns 50% of NHP Holdings, which owns 100% of NHP Indiana and 100% Neighborhood Health Providers. It is organized under the laws of the State of New York, with its principal place of business, Kings County. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

82.     LCSC Holdings, Inc., is for-profit holding company which owns a 30% share of Royal Health Care. Its sole shareholder is LCSC. It is organized by the Sate of New York with

17

its principal place of business Kings County. David Rosen, Bruce J. Flanz and Mounir Doss are its only Directors. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

83.     Royal Health Care, LLC aka Royal Healthcare of Long Island is a for profit corporation which provides management services to NHP and other managed care entities. It owns 100% of Royal Health Care Data Center, LLC. Rosen is the chairperson. Flanz and Doss are its only Directors. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

84.     Royal Healthcare Data Center, LLC is a for profit organized under the laws of New York, with its principal place of business in New York and Indiana. Its Directors: Rosen, . Flanz and Doss. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

85.     MediSys Ventures, Inc. is a for-profit holding company that owns 100% of the Hi-Tech Medical Equipment, Inc., Brookdale Rx. MediSys Management, LLC, FRR Recovery, Inc., MediSys Home Care Services, Inc., MediSys IPA LLC. MediSys Ventures sole corporate member is MediSys Health Network Inc. and 30% of Royal Health Care. Its board of Directors: David Rosen ( Chairperson), Bruce J. Flanz, Mounir Doss, William Lynch ( Vice President Jamaica Hospital) Manzar Sassani ( Jamaica employee) Fred Beekman ( Jamaica employee) and Jackie Holley, RN ( Jamaica employee), all controlled employees of Jamaica Hospital. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

86.     The BHMC Enterprises is a for profit holding company. It is organized under the laws of the State of New York. Its only Directors are Rosen, Flanz and Doss. Its sole member is Linroc Community Service Corporation. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

18

87.    Brookdale Emergency Services is a not for profit corporation organized under the laws of the State of New York. Its only Directors are Rosen, Flanz and Doss. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

88.    MediSys Service Corporation is a not for profit corporation. It is a holding companying that was organized under the laws of the State of New York. Its sole member is MediSys Health Network. Its Directors are Rosen, Flanz, Doss and Manzar Sassani( Jamaica Hospital Vice President of Finance). Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

89.    International Association of Medical Bikes is a not for profit, tax exempt 501(c) (3) organization, organized under the laws of the State of New York with its principal place of business Queens county. The company purpose is to train paramedic in service delivery via bicycles. Its only Directors are David Rosen, Bruce J. Flanz, and Mounir Doss. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

90.    The John Does Inc.1-10 are all the unknown legal entities that are legally controlled or owned by MediSys Health Network, Inc. Defendant is an employer within the meaning of § 292 of the NYSHRL and § 8-102(5) of the NYCHRL.

91.    The John Does 1-10 are all of the unknown Directors/Trustees of the named corporate defendants, and the unknown legal entities, related, and/or controlled by MediSys Health Network, Inc.          **VENUE**

92.    Venue in this action is based on the principal place of business of the Defendant, Brookdale Hospital Medical Center, in Kings County.

## PRELIMINARY STATEMENT

93.    This is an action by Plaintiff Margaret Johnson, the former Senior Vice President

19

& General Counsel, and Corporate Compliance Officer of Defendants MediSys Health Network, Inc., and all of its affiliated entities, which includes Defendants Brookdale Hospital Medical Center, Jamaica Hospital Medical Center, and Flushing Hospital Medical Center, Neighborhood Health Providers, LLC; the former Officer of the Board of Trustees of the Brookdale Hospital Medical Center, and its related Brooklyn corporations ; and, the former Director of Neighborhood Health Providers.

94.   Plaintiff is an attorney duly licensed in the state of New York to practice law and is an Officer of the Court in good standing.

95.   Plaintiff is alleging that Defendants terminated Plaintiff in violation of the implied contractual obligation that, as Defendants ███████████ Plaintiff would act in compliance with the ethical and ███████████████████████████████████████████████████████ would not impede ████████████████

97. ████████████████████████████████████████████████████████████ amount to intentional and tortious interference with Plaintiff's contract and negligent infliction of emotional distress.

98.   Plaintiff also alleges and complains that, in violation of the United States

20

Constitution, Federal, State laws, rules and regulations and New York City Human Rights Law, Defendants discriminated against Plaintiff due to Plaintiff gender, harassed and subjected Plaintiff to a hostile work environment and Defendant David P. Rosen terminated Plaintiff because Plaintiff refused to engage in a romantic relationship with Rosen.

99.     Plaintiff alleges and complains that the Defendants failed to comply with the US Sentencing Guidelines, and MediSys' Corporate Compliance Program, The Standards of Excellence, Code of Ethics & Business Conduct, it related charters, rules, and policies, its human resources policies by the illegal, and wrongful termination against the Plaintiff upon Plaintiff's reporting of perceived and actual unethical acts, by the Defendants engaging in self dealing, ignoring conflicts of interests and failing to complying with the corporate formalities and engaging in discrimination, and profile in violations of the Federal, State and City laws.

100.     Plaintiff alleges and complains that the Defendants failed to comply with the US Sentencing Guidelines, and MediSys' Corporate Compliance Program, The Standards of Excellence, Code of Ethics & Business Conduct, it related charters, rules, and policies, its human resources policies by the illegal, and wrongful retaliation against the Plaintiff upon Plaintiff's reporting of perceived and actual unethical acts, by the Defendants engaging in self dealing, ignoring conflicts of interests and failing to complying with the corporate formalities and engaging in discrimination, and profile in violations of the Federal, State and City laws. Resulting in an "Ineffective" paper Corporate Compliance Program.

101.     Plaintiff alleges that Defendants breached their fiduciary duties of trust, care, loyalty, and obedience, under the laws of the State of New York, including but not limited to Article 7 of the Non Profit Laws, ("NPL") Estates, Powers and Trusts Law ("EPTL") §8, et. seq., Common Law and Equity by failing to follow the corporate formalities, by failing to use good and common sense decision making, by failing to take the actions that an ordinary prudent business person would take, by failing to follow good and accepted business practices, by discharging the General Counsel without an investigation therein, by denying access of the General Counsel to the Trustees, by denying the General Counsel to the Trustees, by denying Trustees access to the meeting, by hiding the true purpose and agenda of the meeting by failing

21

to use due deliberation and consideration or ample time to deliberate although requested by various voting members of Trustees. By allowing interested parties to co-chair the meeting, provide legal advice without any input from disinterested parties.

102.   Plaintiff alleges and complains that the Defendants,  violated their fiduciary duties, allowed the mismanagement of Brookdale, placed their own interest before the Company and  by proving excessive salaries and benefits, advancement of legal fees in the criminal matter without providing the necessary due diligence.

103.   Plaintiff alleges and complains that Defendant Timothy Dufficy with malice, hate and in revenge had encouraged, supported and actively participated in Plaintiff's illegal, wrongful termination in retaliation for the severance of the employment relationship of his daughter with Brookdale's Legal Department and the disagreements his daughter had with the paralegal in the Legal Office. He continues to do so to date.

104.   Plaintiff alleges and complains the Defendants including Neighborhood Health Providers and its individual Directors and Officers , Rosen, Flanz, Doss, Dr. Alvin Kahn, Vito Buccellato  and its President Steve Bory, (who testified under a non prosecutorial agreement in the Seminerio matter),  breached its fiduciary duties of trust, loyalty care when  on November 26, 2008, Plaintiff was removed as a Director of the Board of Directors of Neighborhood Health Providers, without due process, and in violation of the law.

105.   On November 14, 2008, Plaintiff called for an internal investigation regarding potential conflict of interest in the Seminerio matter, placing the Director's & Officer's Liability carrier on notice with Plaintiff demand for an internal investigation.

106.   The Defendants Directors of Neighborhood Health Providers are all interested parties by being a subject of the criminal investigation and/or receiving a salary from MediSys, Jamaica, Brookdale or Neighborhood Health Providers. Pursuant to the NPL, the interested parties should not have voted.

107.   Plaintiff alleges and complains that Defendants, including Neighborhood Health Providers and its only Directors, Rosen, (Chairperson), Flanz, (Vice Chairman) Dr. Kahn,

22

("Kahn") and Doss, (Vice Chairman) and Vito Buccellato (Brookdale Vice President"), jointly and individually breach their respective duty of trust, care and loyalty when it placed Managements personal interests before the company's interest and failed to follow.

108.    Plaintiff alleges and complains that the Defendants, jointly and individually breached their fiduciaries duties, engaged in self dealing/interests or matters involving conflicts of interest, were complicit in the actions of management, and placed the interest of management before the hospital and its respective community they serve by taking the aforementioned actions.

109.    Plaintiff alleges and complains that all of the MediSys corporations are undue influence by Rosen,   Flanz and Doss, and not the respective board of Trustees and Directors.

110.    Plaintiff alleges that the Defendants Trustees are a mere alter ego of Rosen, Flanz and Doss. Defendants' actions were fraudulent in nature and against the interest of its corporate charge.

111.    Plaintiff complains that Defendants engaged in the unlawful discrimination of Plaintiff in the terms, conditions, and privileges of Plaintiff employment in violation of NYSHRL, Executive Law 290 et seq. ("NYSHRL") and the Administrative Code of the City of New York 8-101 et seq. ("NYCHRL") based upon Plaintiff sex, female.

112.    Plaintiff complains that Defendants engaged in the unlawful retaliation of engaged in the unlawful retaliation of Plaintiff for her lawful, protected activity and complaints regarding unlawful discrimination in the terms, conditions, and privileges of Plaintiff employment in violation of NYSHRL and NYCHRL based upon Plaintiff sex, female.

113.    Plaintiff complains that Defendants created a hostile work environment base upon gender by making rude crude remarks. Rosen labeled females. The female attorneys were referred to as C**** (Suzie  the "C word"), other females were routinely referred to as bimbos.

23

114.    Jamaica Hospital wrongfully terminated it prior General Counsel for similar reason. The Plaintiff was constantly reminded that she was like that crazy Irish lady who had to do things legally. That General Counsel was ultimately reinstated; however, no remedial action was taken against Flanz. The prior General Counsel left due to the hostile work environment.

115.    Plaintiff alleges and complains that Defendants, individually and jointly, engaged in discriminatory conduct by condoning and subjecting Plaintiff to "quid pro quo" sexual harassment in that Plaintiff was subjected to, under the threat of granting or withholding job continuation and/or benefits, a constant barrage of discriminatory, embarrassing, sexually perverted, bizarre, unwelcome, inappropriate contact and pressuring behaviors, propositions, innuendos, comments, correspondence, discussions and sexual advances and contact in violation of NYSHRL and NYCHRL.

116.    Plaintiff complains that Defendants, individually and jointly, engaged in discriminatory conduct by condoning, and subjecting Plaintiff to hostile work environment sexual harassment consisting of a constant barrage of discriminatory, embarrassing, sexually perverted, unwelcome, inappropriate contact and pressuring behaviors, propositions, innuendos, comments, correspondence, discussions and sexual advances and contact by creating, fostering, encouraging, and condoning a sex-based hostile work environment in violation of NYSHRL and NYCHRL.

117.    Plaintiff's supervisor, Co defendant, Rosen, who should have known better, apart from the obvious impropriety of threats aimed at intimidating Plaintiff personally, in order to coerce Plaintiff into abdicating her fiduciary duties. He abused his position of power , by humiliating, bizarre,  egregious and intolerable forms of sexual discrimination and harassment, which included attempted sexual contact, discriminatory, humiliating, sexually perverted, filthy, lewd, unwelcome, crude and inappropriate behavior, jokes, innuendo, contact, advances, connotations and abuse, for which Plaintiff is no legitimate purpose or business justification. Rosen and Doss also  condoned, supported and allowed Defendant Flanz's to harass, intimidate,

24

bully coerce, humiliate and demean Plaintiff in front of staff and outside counsel, when Rosen didn't get his way. Workplace bully.

118.   Plaintiff alleges that Defendants, individually and jointly, with sinister motives such as hatred, revenge, personal spite, ill will and in gross indifference and reckless disregard to Plaintiff's personal and professional wellbeing set out; did, and continues to defame and ruin plaintiffs' personal and professional reputation causing loss of reputation, inability to gain employment within Plaintiff field and community, and suffering great pain, mental anguish and humiliation and economic and compensatory damage after Plaintiff retaliatory, illegal wrongful discharge.

119.   Plaintiff alleges that MediSys Health Network, Inc. has not limited its role with respect to its Member Entities to that of a passive member and has involved itself in the "active parent" activities specified in Department of Health Regulations.

120.   Plaintiff alleges that Defendants, individually and jointly, have not maintained the corporate formalities with respect to each separate entity. MediSys can be viewed as a hospital operator or as requiring Article 28 Establishment. Each MediSys Member has its own Board and has appointed its officers and senior managers, in accordance with its role as governing authority of each entity. However, The Boards are the same, management is the same.

121.   Plaintiff alleges that the Trustee actions are not taken with the prerequisite information, due deliberation and consideration as required. Trustees and management are conflicted by financial and other relationship.

122.   Plaintiff alleges that the Defendants Trustees vote the way Rosen directs.

123.   Plaintiff ages that the Defendants, individually and jointly, by their actions and omissions violated common and statutory laws of trust, care, loyalty and obedience.

124.   It is alleged that Kahn received an annual salary of approximately $300K, and

25

other benefits since 2001 in violation of the By-Laws. The By-Laws prohibit the Trustees and Chairman from receiving a salary.

125.    Plaintiff alleges that Defendants, jointly and individually, engaged in nepotism to such an extent that it denied similar salaries to current staff.

126.    Plaintiff alleges that the Defendants, jointly and individually, engaged in an active and continuing campaign of defamation and violation of New York State Civil Rights Law by directing the Security Offices to hang a large picture of the Plaintiff and prominently hang on a police wanted board, next to pictures of wanted criminal, deviates and gang member for all to see, publicly and privately.

127.    Plaintiff alleges that Defendants directed the Security Officer to engage in profiling, stopping any and all skinny, female, blonde wearing high heels that may be the Plaintiff. The Security Officers were directed to stop, question and call Administration and hold the person in custody until the Executives confirmed that it was not the Plaintiff. The Security Department was directed to keep the Plaintiff off of Brookdale's campus.

128.    Plaintiff alleges that many staff, patients, and visitors were stopped and questioned.

129.    Plaintiff alleges that this practice continues today,

130.    Plaintiff alleges that Jackie Magonis, RN, was stopped on more than one occasion. She was dragged out of the coffee shop, located in Brookdale's lobby next to the 340(B) Pharmacy and Bank by a Security Officer. The Security Officer screamed, "You do not belong here Ms. Johnson" "Get out and Stay out" When Nurse Magonis attempted to leave, the Security Officer blocked her passage, and held her in custody for all to see until it was confirmed that the detained person was not the her. She was treated like a criminal.

131.    Plaintiff alleges that Defendants, jointly and individually, violated her Civil

26

Rights, under New York State Civil Right's Law Article 4, et. seq., and the Federal Civil Right's Law and Equal Protection Laws and guarantees of the US Constitution, 28 USC Section 1331,1341, Section 1988, 42 USC Section 2000e, when Plaintiff was barred from the hospital campus, wherein was located her healthcare provider, federally funded 340 (B), discount pharmacy, bank, public restaurant, and subjected to discrimination and harassment by the above. Plaintiff claims that for each and every violation, starting on November 8, 2008 to date the Defendants are liable to a penalty to be recovered by the Plaintiff, aggrieved, in any court of competent jurisdiction.

132.    It is alleged that on more than one occasion, more specifically January 21, 2010, at approximately 1:30, Ms. Genco, a pretty, skinny, female, blonde wearing high heels was told by Security Officer Cameron at Brookdale Hospital, that Plaintiff was banned from the Hospital because the Plaintiff caused the federal investigation and was going to jail. That Security had to stop all female, skinny, blondes, wearing high heels to make sure the Plaintiff does not get into Brookdale.

133.    Plaintiff alleges that the Defendants, jointly and individually, defamed her causing her much damage.

134.    Plaintiff alleges that Co-Defendants Fogler and Kahn made insulting and demeaning comments to Ms. Feely, former risk manager and other staff in attempt to ruin Plaintiff's good name.

135.    Plaintiff alleges that Defendants actions are so pervasive and severe that staff are intimidated to voluntarily come forward fearing retaliatory action.

136.    Plaintiff alleges that the Defendants, individually and jointly, actions and omissions are in and of themselves serious violations of the US Federal Sentencing Guidelines, Defendants' Corporate Compliance Program rendering the entire program "ineffective" and in violation of the Office of Inspector General Guidelines as well as the New York State Attorney

27

General Office's Guidelines, and Best Practices.

137.     Plaintiff alleges that Defendants, individually and jointly, barred Plaintiff from entering Brookdale's Hospital property to gain access to Plaintiff office of 13 years containing personal property, and access to Plaintiff physicians' offices, and the 340(B) discount pharmacy in violations with the licensing agreements, and federal and state law.

138.     Plaintiff alleges that the Defendants receive funding from the Federal, State and City and are required to be in complying with all rules, regulations and laws.

## THE FACTS

139.     In the early 1990s, The Board of Trustees of Brookdale Hospital & Medical Center, and its then parent corporation, Linroc Community Service Corporation and it related entities, recognized the increase of legal risks facing not for profit hospitals and its Trustees – changing regulations, litigation, legislation or scandal—required greater organizational reliance on an effective system of legal controls. The Trustees' duty of trust, care, loyalty and obedience, included the obligation to assure the effectiveness of the General Counsel. In response the Trustees created the position Senior Vice President & General Counsel.

140.     In December 1995, Plaintiff  was hired as Brookdale Hospital's and its related entities, Senior Vice-President and General Counsel, and Assistant Corporate Secretary at a salary at approximately $100,000. As General Counsel, Ms. Johnson, Esq., was expected to perform Plaintiff duties, as Brookdale Hospital's chief legal officer, in compliance with the ethical and disciplinary rules governing attorneys in New York, and that neither Management nor the Trustees would impede or frustrate Plaintiff in doing so. It was an implied contractual term implicit with Plaintiff duties and responsibilities.

141.     Plaintiff was later appointed the Corporate Compliance Officer for Brookdale Hospital and all of Brookdale Hospital's related organizations. The Corporate Compliance Program, including The Standard of Excellence, Code of Ethic & Business Conduct was

28

endorsed and adopted by the Trustees for Brookdale Hospital and all of its related corporations. It applies to everyone including the Trustees, and vendors - Brookdale business partners. The Code contains basic standards that are necessary to promote: honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships; full, fair, accurate, timely, investigations and understandable disclosures in the company's periodic reports; and compliance with applicable governmental laws, rules and regulations.

142.    Brookdale's Compliance Program and Public policy imposes an obligation on the Trustees to preserve and protect the General Counsel's role as part of the Trustees' oversight function. The Trustees oversight obligation includes support for the role of the General Counsel as a key participant in the organization's compliance and governance functions.

143.    The Compliance Program protects anyone who reports a known or perceived unethical or illegal conduct. The process includes a thorough and appropriate investigation, taking statements, and interviewing witness. Retaliation in any form to a person who reports possible unethical or illegal conduct is strictly prohibited, and is itself a serious violation of the Code of Conduct. The Code of Conduct applies to everyone including the Trustees.

144.    In June of 2000, Brookdale entered into a Management Agreement with Jamaica Hospital/MediSys Health Network, Inc.,

145.    In September of 2000, Brookdale Hospital became a member of the MediSys Health Network.

146.    In 2002, Plaintiff was appointed General Counsel to MediSys and all of its affiliated entities, which included Brookdale Hospital, Jamaica Hospital, Flushing Hospital, Neighborhood Health Providers and the remaining named corporate defendants, ("collectively MediSys"). Plaintiff was later appointed Senior Vice-President & General Counsel of MediSys, Corporate Compliance Officer of MediSys, and appointed to the Board of Directors of

Neighborhood Health Providers. Plaintiff's salary, however, continued to be paid by Brookdale Hospital. In fact, Plaintiff employees also received their salary and/or benefits, professional insurance coverage paid by one of the MediSys entity while working full time at a different MediSys company.

147.    Throughout Plaintiff employment by MediSys, Plaintiff's performance was more than satisfactory, and Plaintiff received regular raises. By 2008, Plaintiff's salary had been increased to approximately THREE HUNDRED SIXTY SIX THOUSAND DOLLARS, ($366,000.00), and received the use of a luxury car at the same level as did Rosen and Flanz (luxury Lexus LS) and Doss a Lincoln Continental. Plaintiff was promised by both Rosen and Doss that Plaintiff would always be "taken care of" receiving the same contractual benefits and protection as they did.

148.    On or about September 9, 2008, Assemblyman Anthony Seminerio, ("Seminerio"), a New York State Assemblyman, was arrested by federal authorities and charged with accepting bribes from various entities to use his legislative office to improperly benefit those entities.

149.    Among the clients of Seminerio's consulting firm were Jamaica Hospital and Neighborhood Health Providers. Seminerio was alleged to have taken actions as a legislator to benefit Jamaica Hospital, and Neighbor Health Providers.

150.    Specifically, the press reported that the United States Department of Justice, Southern District, (US Attorneys) alleged that Seminerio, among other things, had assisted MediSys and Rosen in their efforts to acquire Mary Immaculate and St. Johns's Hospitals. These acquisitions required the approval of the New York State Department of Health. Seminerio was alleged to have contacted a Health Department official to specifically praise MediSys and Rosen personally and disparage another hospital (Non MediSys) that sought to acquire Mary Immaculate and St. John's Hospitals. Seminerio then reported his conversation with the Health Department official directly to Mr. Rosen. (Attached US Attorney's briefing

30

document and Judge Naomi Reice Buchwald decision dated, January 26, 2010).

151.    On or about September 23, 2008, the New York Sun reported that Seminerio was arrested on charges of using his consulting company to conceal payments for doing legislative favors for unnamed Hospital executives, believed to be MediSys.  It was reported that since 2003, a Democrat State Assemblyman of Central Brooklyn, William Boyland, Jr., had also received an unspecified amount of outside income from Brookdale Hospital.  Mr. Boyland Jr., had cut the conversation with the reported abruptly when asked to explain his responsibilities at the Hospital with more details.

152.    Former Assemblyman Seminerio eventually was indicted, pled guilt and was sentenced to 6 years in prison in February 2010, according to the New York Times and other publications. The New York Times reported and provided links to some documents, transcripts and taped phone conversations between the Assemblyman Seminerio and Rosen, and other regarding payments owed to Seminerio among other things. (See US Attorney pre sentencing brief and Judge Naomi Reice Buchwald decision dated, January 26, 2010).



154.    The Trustees were apprised of the initial allegations, the subpoena and the

retention of separate counsels for Rosen, Flanz, Doss and others. Judge Dufficy demanded an immediate corporate compliance investigation.

155.   It was made explicitly clear to   Attorney Rocco by Plaintiff that Attorney Rocco's client was MediSys and that he did not represent the Subject Executives.

156.   The New York Code of Professional Responsibility ("NYCPR"), which was applicable to lawyers practicing in New York until April 1, 2009, provided that

> (w)hen a lawyer employed or retained by an organization is dealing with the
> organization's directors, officers, employees, members, shareholders or other
> constituents, and it appears that the organization's interests may differ from those of the
> constituents with whom the lawyer is dealing, the lawyer shall explain that the lawyer is
> the lawyer for the organization and not for any of the constituents.

157.   The NYCPR further prohibited a lawyer from representing individuals whose interests were averse to a client, discussing client confidences or client secrets with other individuals, and permitting a person who recommended the lawyer for employment to influence the lawyer's representation of the client. Taken together, these disciplinary provisions obligated Attorney Rocco to deal  with MediSys through Plaintiff, MediSys' General Counsel, and refrain from communicating with, taking direction from, or being influenced by the Subject Executives, particularly given that Rosen, Flanz and the other executives potentially had conflicts of interest with MediSys and its related entities.

158.   The Engagement Agreement with Attorney Rocco's firm required him to report to the General Counsel. The clause is a standard clause and is considered "best practices" drafted by expert in the field, McDermott, Will & Emery.  The same was reasonable and necessary to protect Plaintiff's clients.

159.   Attorney Rocco with complete disregard for these ethical obligations. Throughout the investigation, Attorney Rocco communicated with, advised, and took direction from Rosen, Flanz and Doss instead of Plaintiff. Incredibly, Attorney Rocco informed Plaintiff

32

could not discuss certain matters with Plaintiff because Plaintiff was a potential witness in investigation for not knowing about the alleged unlawful relationship, while, at the same time, communicating with Rosen, Doss and Flanz subjects of the investigation, who retained separate lawyers to represent them, about the same matters. He also refused to meet /speak with the Trustees regarding actions that needed to be taken saying rather it was managements decision. Placing management's interests before MediSys.

160.    Plaintiff alleges and complained of these aforementioned actions of Attorney Rocco who reported it to Rosen and not the Corporations or its General Counsel.

161.    As MediSys' General Counsel, Plaintiff was ethically obligated to ensure that Attorney Rocco's represented MediSys in an ethical and lawful fashion, and to take action if Attorney Rocco failed to do so.

162.    Defendant Rosen's continued involvement with Attorney Rocco created at least the appearance of impropriety and his ██████████████ were adverse to MediSys, and  the Plaintiff, which cumulated in Plaintiff's ████

164.    Defendant Rosen forbid Plaintiff from briefing the Trustees outside his pres██ Plaintiff left a message to Neil Phillips, chairperson of MediSys, and Jamaica Hospi██ Plaintiff was forced to share an office with Rosen at Jamaica and Flushing Ho██ call was routed to Rosen. Rosen advised Phillips that there were no proble██ would brief the Boards. Rosen later showed Plaintiff the PIN or text m██

33

untwisted, information would be provided **BY** Rosen later.

165. On October 13, 2008 during a Brookdale Trustee meeting, a former Trustee, Roth asked Plaintiff for a briefing on the Seminerio investigation. Rosen directed Plaintiff to answer; instead Rosen answered by stating there was no real issue for Management and asked questions on how he was going to defend the Government's baseless claims.

166. Plaintiff interrupted Rosen, advising Rosen it was inappropriate for him to discuss a defense when he had separate counsel, due to possible conflicts of interest. After, Defendant Rosen yelled at Plaintiff telling her she "…was impeding his well being, and it will not be tolerated" and he "…..would not go down on this." Plaintiff "..is the target." Plaintiff was never a target of the investigation.

167. Plaintiff was particularly concerned about Defendant Rosen's involvement in the investigation because of Defendant Rosen's incentive to place his own interests ahead of those of MediSys. Defendant Rosen's annual compensation from MediSys has been reported exceeded $2.2 million. Indeed, Defendant Rosen regularly requested Plaintiff, in her work relating to the investigation, to "keep it in the family," or " let the boys handle it" which Plaintiff interpreted as a request to avoid disclosing damaging evidence to the government. Rosen also advised his staff to use PIN, text avoid using names.



169. Plaintiff continued to complain about Defendant Rosen's involvement and interference with the evidence and handling matters that he should not have.

170. Defendants and their agents, employees and servants actively placed Defendants Rosen, Hanz and Doss' interest before Medisys and the Hospitals.

34

171.    Plaintiff did not agree that it was a management decision, Rosen, Flanz and Doss, but rather a Trustee decision.



173.    On approximately October 27, 2008, Doss told Plaintiff that unless she refrained from Plaintiff's duty to oversee Attorney Rocco's representation of MediSys, Plaintiff would be terminated, demoted or reassigned ("Banished to Brookdale"). He further stated, "This is a big deal with the attorneys, they are plotting against you....... Please I know it is bull shit, I believe you, I told Dave"....." they { the executives attorneys} all want you out, your head is on a silver platter." "He {Rosen} will embarrass you". "The Board hates you, Judge Dufficy hates you, Bruce wants you gone.... Yes, they will fire you!".

174.    Immediately thereafter, Plaintiff called Rosen. Rosen advised Plaintiff that he was tired of Plaintiff, "playing the corporate compliance and general counsel card." " Your actions are impacting my wellbeing." "We hired Vic, big time lawyer, you are now compromising our relations with our attorneys"

175.    Plaintiff requested access to the Trustees to brief them but was access was denied. Plaintiff believed that there were conflicts of interests, breaches in the Chinese wall, appearance of impropriety and possible inappropriate, unethical, acts, and action needed to be taken to ensure that each hospital and entity was legally protected from liability.

176.    Plaintiff was troubled by the continuing breach of the Chinese wall, and the poor perception the US Attorney would have of MediSys, if and when they learned of the breach of the Chinese wall, she believed they might decide to indict both for obstruction of the investigation.

35



177.    Notwithstanding this clear and material term of his engagement, Attorney Rocco refused to comply with his obligation to the Company in this regard.

178.    Specifically, Attorney Rocco failed to establish a direct line of communication with the General Counsel and, more importantly, has failed to keep Plaintiff, as General Counsel for the Company, apprised of what he is doing, the progress of the investigation or material developments.

179.    Plaintiff sought to discuss this matter with Attorney Rocco, and insisted that he comply with the terms of his engagement with the Company.  To Plaintiff's disappointment, I did not receive a satisfactory response from Attorney Rocco. Plaintiff received a completely inappropriate, indirect response.  Plaintiff was advised by Doss that unless she abdicated her responsibility to the Company as its General Counsel to oversee Attorney Rocco's conduct of the investigation as set forth in the letter of engagement, Plaintiff would be fired, demoted or reassigned.

180.    Apart from the obvious impropriety of threats aimed at intimidating Plaintiff personally in order to coerce her into abdicating her fiduciary duties to the Company, the situation, in which outside counsel refuses to comply with the terms of his engagement with the Company, places the Company and its Board of Directors at risk.

181.    Accordingly, in order to insure proper oversight by the Company of the investigation conducted by its outside counsel, and in the face of counsel's refusal to honor his contractual commitment to the Company, Plaintiff was left with no alternative but to discharge

36

Attorney Rocco, violation of his duties.

182. On Friday evening, November 7, 2008, upon advice of outside corporate counsel, Plaintiff informed Attorney Rocco that due to his failure to abide by his ethical responsibilities in representing MediSys, his services were being terminated. Simultaneously, Plaintiff advised all of the Trustees of Plaintiff action and called for an immediate Special meeting, to review actions taken, the perceived conflicts and to have the Trustees select a new outside counsel and a committee that Plaintiff could report to.

183. Since the Trustees would be in need to promptly retain new outside counsel, and because Defendants, Rosen, Flanz and Doss are conflicted from participating in this process, Plaintiff requested that the Trustees call a Special Meeting of the Board in order to select new outside counsel. Plaintiff also requested that the Board, at the meeting, appoint a Special Committee of Independent Directors of the Board to oversee the investigation and to whom I may report.

184. On Monday morning, November 10, 2008, at the request of Defendants, Rosen, Flanz, Doss, Tim Dufficy, and Kahn, Plaintiff's employment was terminated from Brookdale and MediSys.

185. On Monday, November 10, 2008, at approximately 10:00 a.m., the Brookdale Trustees were called to participate in an emergency board meeting via telephone within two hours, even though a regularly scheduled board meeting was properly noticed and scheduled for that Thursday, November 13, 2009.

186. Allen Roth, Brookdale Trustee who subsequently resigned was advised that the call was "for informational purposes only. The call was concerning the Federal Investigation" and, "no action would be taken". He also advised that the Plaintiff was not to know. He believed Dr. Kahn that no action would be taken and believing that no management would be present, Mr. Roth decided to attend his previously scheduled business meeting. Thereafter, Mr. Roth heard of

37

the termination without due process or consideration and resigned from the Board of Trustees. (See attached resignation letter).

187.     Allen Swerdlick, another Brookdale Trustee, was told that his attendance would not be necessary on the Monday emergency phone conference since only one or two Trustees were able to participate. He was advised that the meeting was for information purposes only. Thereafter, he learned that the meeting did go forward. He was denied access to the meeting.

188.     The  meeting was Co-Chaired by Attorney Rocco, who was already terminated, and minutes were taken by Defendant Rosen's secretary.

189.     The Brookdale Trustees insisted upon hearing from the Plaintiff but the Chairman of the Board, Kahn denied the requests.

190.     The Brookdale Trustees questioned the legitimacy of the investigation and timing. Demanding minutes, briefing, timeline and access to the Plaintiff. All Trustees requests were denied.

191.     The Trustees were told that the sole issue was the interpretation of the language in the engagement clause.

192.     During the November 10, 2008 meeting, Attorney Rocco acted behalf of Defendant Rosen. He argued in defense of his interpretation of the clause, denied the Plaintiff and/or McDermott Will &Emery their interpretation, then proceeded to advise on the law and, with the assistance of Kahn, forced a vote of termination of Plaintiff.

193.     The Brookdale Trustees never received any of requested information as promised.

194.     Plaintiff was denied procedural due process as mandated by MediSys Corporate

38

Compliance Program, Best practices, and other policies and procedure. . Due Process was ignored by the Defendants.

195.    The meeting did not follow the procedure as sent out in the By-Laws.

196.    Attorney Rocco had no right to chair the meeting, not being part of the Board. .

197.    Richard Radusky and Edwin Schulman (Brookdale Trustees) also had due process arguments and wanted to hear from the Plaintiff as per Brookdale's rule of fair dealing.

198.    In fact, several Trustees asked why this action could not wait till the regularly scheduled meeting on Thursday. Their requests were denied.

199.    After the meeting, Richard Radusky, commented that the Plaintiff was fired because it was what MediSys {Rosen} wanted. He said "it felt strange, very uncomfortable". Plaintiff was fired only because Plaintiff fired Attorney Rocco, "it struck me as a justification for getting Margo {Plaintiff} out of the picture…. "it was kind of insulting, the whole thing was forced by Attorney Rocco and Dr. Kahn"…"They didn't want {plaintiff}, going against MediSys and what Rosen wanted." "The agenda was apparent, the purpose of the meeting met."

200.    Mr. Radusky reported that nothing about the Federal Investigation was discussed. Except that he, Attorney Rocco, was confident that things would work out for Management.

201.    Timothy King (Former Brookdale Trustee) questioned the rational to take such serious action without time to think about it. "We do not have any of the facts." "I was taken back, how on earth could we take such actions without any facts."

202.    The Trustees violated their fiduciary duties. The common law duty of care requires that the Trustees, Directors and Officers of charitable organizations be attentive to the organization's activities and finances and actively oversee the way in which its assets are managed. This includes attending and participating in meetings, reading and understanding

39

financial documents, ensuring that funds are properly managed, and **asking questions and exercising sound judgment.**

203.    New York has codified the standard for the duty of care in N-PCL § 717, which provides that directors and officers of not-for-profit corporations "shall discharge the duties of their respective positions in good faith and with the degree of diligence, care and skill which ordinarily prudent [persons] would exercise under similar circumstances in like positions." *See also* EPTL §§ 11-1.7, 11-2.2 & 11-2.3.

204.    The Trustees fail to follow the elements of the duty of informed decision-making which includes:

• the opportunity to hear a detailed presentation, accompanied by written materials if appropriate, explaining the bases for the proposed decision and management's rationale for the specific recommendation;

• the opportunity to debate and deliberate on the proposal at the board level and, if possible, to allow for reflection and further consideration before requiring a vote;

• gather of information from comparable institutions about how they dealt with similar situations;

• the opportunity to discuss matters in closed session, *i.e.*, without the presence of management; and

• the opportunity to request additional relevant information from management or outside experts, including legal counsel, and time for the board members to consider such additional information.

205.    Immediately, after the meeting, Plaintiff was terminated. In an effort to disgrace Plaintiff, Plaintiff was escorted out by Security.

206.    Plaintiff was advised that Rosen and Flanz wanted Security to walk Plaintiff out

40

through the hospital for all to see., Defendant Rosen is MediSys, If they can get rid of Ms. Johnson, Esq., the Senior Vice President & General and Corporate Compliance Officer, Defendant Rosen could get rid of anyone.

207.     Plaintiff was not allowed to take any of Plaintiff's personal items except for Plaintiff hand bag.

208.     Plaintiff was told Plaintiff was not allowed on Brookdale campus.

209.     Plaintiff was told her personal property would be sent to her, it never happen.

210.     Security was directed to hang an oversized picture of the plaintiff, which was prominently displayed in the Security Office for all to see, right next to pictures of gang members, deviants and wanted criminals.

211.     Although Plaintiff and other employees requested the picture be taken down it was not. People have questioned why Plaintiff's picture was on the Police wanted/Criminal Board. This was a further effort to humiliate and ruin plaintiff's good name and reputation.

212.     More incredible, the entire Security Department at Brookdale were directed to "Stop, question and detain all skinny female blondes in high heel"

213.     The Security Department was told that "Plaintiff is not allowed on premises, Plaintiff is a criminal" and to notify the executive office of the same. These directives are still in place today.

214.     Defendants' Security Officers stopped patients, visitors and employees who fit the profile. Those people were detained and harassed until that could prove they were not the Plaintiff.

215.     One employee, Jackie Migonis, RN, was stopped, detained, made to show identification on more than one occasion. She became frustrated with the constant harassment because she fit the profile. The last time Nurse Migonis was detained, she was dragged out of the coffee shop, located in the lobby of the Hospital next to Brookdale Rx, and the bank. She was

41

extremely upset, because the Defendants' Security Officer was screaming at her, thinking she, was the Plaintiff. He yelled at Nurse Migonis that Plaintiff did not belong at Brookdale anymore. Get out and stay out!!! When Nurse Migonis tried to move, the Defendants' Security Officer step in front of Plaintiff, until the Executive Office was notified.

216.  Suzanne Pennichio, RN ( Senior Vice President of Nursing) and Vito Buccellato were notified and appeared with more Security.

217.  Both Ms. Prennichio and Mr. Buccellato could see that Nurse Migonis was not the Plaintiff and apologized to her. Nurse Migonis noted she was extremely upset and that Security had to stop harassing her. She was not the Plaintiff. She did not do anything wrong. She did not commit a crime.

218.  Upon information and believe some time following the termination, some of the Trustees attended a non related fund raiser. Lowell Rubin (Brookdale Trustee') advised a former physician that, "Dr. Kahn (Chairman of the Board) advised that "either Margo { plaintiff} gets fired or Dr. Kahn would lose his position as Chairman of the Board...... "It is what MediSys wanted"...... "The Board voted in the dark. It was very upsetting." "The Trustees didn't get the information they were promised. The Board was not told the truth."

219.  This travesty is coupled with the fact that at the next meeting on November 13, 2008 the Board again did not receive the information it had requested at the time of the emergency meeting.

220.  Amazingly, Attorney Rocco refused to attend the November 13, 2008 meeting, or fully brief his client, the Brookdale Trustees, since he said he did not trust his client, Brookdale Trustees.

221.  The Defendants' corporations are federally and State funded. Accordingly, it can not discriminate nor engage in such activities such as profiling, violation of civil rights, equal protection and due process. Defendants, jointly and individually violated this mandate.

42

222.    The lobby is a designated "Public" space. Many doctors offices, restaurant, bank and a pharmacy are located within the Hospital.

223.    The doctors offices, the pharmacy, the restaurant, the bank, are all open to the general public.

224.    Plaintiff's doctors' offices are located at Brookdale Hospital.

225.    Plaintiff was denied access to her doctor's office.

226.    Brookdale Rx, a 340 (B) federally funded discount pharmacy is located inside the hospital, providing medications and prescription drugs at a discount to its customers. Part of Brookdale Rx's licensing agreement is that is open to the public.

227.    Plaintiff uses Brookdale Rx to fill Plaintiff prescription.

228.    Plaintiff was denied personal access to Brookdale Rx.

229.    Plaintiff is unable to see Plaintiff physician.

230.    Plaintiff is unable to pick up Plaintiff prescriptions.

231.    Plaintiff's family member also had to obtain new physicians since it was made clear that they are no longer welcome.

232.    The Defendants, jointly and individually, have violated MediSys' Corporate Compliance program. Pursuant to the *Reporting and Complaint Procedures* : All personnel should raise any question they might have about potentially unethical or illegal conduct with the Corporate Compliance Officer and/or Margaret M. Johnson, Esq., Senior Vice President for

43

Legal Affairs and General Counsel....Moreover, even if you merely have a general question
about the propriety of conduct, you should still reach out to the Compliance Officer for guidance.
Plaintiff is the compliance program's "point person," to whom all officers and employees can
turn to express concerns about such matters....... Your report or question may be raised
anonymously, if you choose, and will be held in the strictest confidence possible, consistent with
the need to investigate any allegations of wrongdoing. To the extent possible, the Compliance
Officer will not disclose the identity of anyone who reports a suspected violation of law or who
participates in an investigation, **All personnel should be aware, however, that the Compliance
Officer/the Senior Vice President for Legal Affairs and General Counsel, are obligated to
act in the best interests of The Corporation and do not act as the personal representative or
lawyer for employees.** Upon receiving a report of possible unethical or illegal conduct, the
Compliance Officer will bring such report, as appropriate, to the attention of senior management,
and, conduct an investigation. All personnel are expected to cooperate in such investigations.
Retaliation in any form against an individual who in good faith reports possible unethical or
illegal conduct is strictly prohibited and is itself a serious violation of the Code of Conduct. Acts
of retaliation should be reported to the Compliance Officer immediately and will be disciplined
appropriately.


233.     The Defendants violated their own rules.  Discipline for Violations of MediSys'
Code of Conduct........All personnel are expected to adhere to this Code of Conduct. If the
Compliance Officer concludes, after an appropriate investigation, that the Code has been
violated, then Ms. Johnson will recommend appropriate discipline, including discharge. Such
recommendation can be based on the employee's unlawful or unethical actions, condoning or
failing to report unlawful actions by others, retaliation against those who report suspected
wrongdoing, or other violation of the Code of Conduct.

234.     The Defendants, jointly and individually,  terminated Plaintiff without any
investigation, in violation of The Code of Conduct and the Compliance Program.

235.     In fact, the Defendants Trustees were denied access to the General Counsel.
Plaintiff was denied the opportunity to inform the Trustees of the violations of ethics, policy and

44